Leon Deutsch, J.
This is a support proceeding brought by the Commissioner of Social Services on behalf of James Vasquez, the stepson of the respondent, Joseph Russell.*
*810 It is the contention of the petitioner that:
(1) The respondent executed a contract with the Department of Social Services whereby he undertook to support the child; (2) that he made payments for a short period pursuant to such contract, and (3) that in any case, section 415 of the Family Court Act imposes liability upon the respondent stepfather in like manner with a natural parent.
The respondent contends that (1) he signed the "agreement” under peculiar and trying circumstances, merely to permit the child to be placed outside the home, and that he never knowingly and voluntarily entered into a contract for the support of the child; (2) that the five or six payments he made to the Department of Social Services were not in part performance of a contractual obligation; and (3) that he never knew of the existence of the child at the time of his marriage, never had the child in his home, and never supported the child; and that under all the circumstances, there is no support obligation under section 415 of the Family Court Act.
We may quickly dispose of the first two issues — the alleged contract and the alleged support — before proceeding to the major issue, that is, whether the respondent stepparent is liable for the support of the child under section 415 of the Family Court Act.
At the hearing, the corporation counsel did not call any witness who testified that respondent knew of the existence of the child at the time of his marriage. Indeed, the petitioner’s witness, the Bureau of Child Welfare caseworker, testified that he had no recollection whether respondent ever told him that he knew or did not know of the child prior to the marriage. (At the time of the marriage the child was living with relatives in Puerto Rico). The respondent’s wife was not called to the stand, presumably (as gleaned from the petitioner’s trial memorandum) to avoid placing undue strain on the marriage. Instead, the petitioner chose to rely on the language of the relevant statutes and upon an "Acknowledgement of Responsibility for the Care and Support of Children” signed by the respondent. Accordingly, the court finds as a fact that the respondent (who did not testify and called no witnesses) did not know of the existence of the child prior to the marriage.
The caseworker further testified that on May 3, 1973 he visited respondent’s wife, who wanted to place the child because respondent would not accept the child into their *811 home. (At that time, the child was in placement at the Angel Guardian Home, and the Bureau of Child Welfare was asked to underwrite the cost.) The caseworker said that respondent’s wife told him that her husband would not have the child in his home nor have anything to do with the child and that this was substantially what the respondent himself said to him. The caseworker also said that respondent’s wife stated that after a time, she would separate from her husband in order to take the child out of placement.
The caseworker also testified that he came to the home in the morning; that the respondent was in his pajamas; that he does not know if the respondent was aware that he was coming; that he told the respondent that before a placement could be made, the respondent would have to sign several forms, one of which was an "Acknowledgement of Responsibility for the Care and the Support of Children”; that he told the respondent that since there was a legal marriage between him and the child’s mother, he (the caseworker), would have to secure a signature and consent from both of them. Significantly, the caseworker testified, that to him it was not a question of legality; it was a question of his needing the respondent’s signature. The respondent signed the documents and thereafter, made five or six payments to the Department of Social Services.
This court finds as a matter of fact, and holds as a matter of law, that the respondent never had the intent to enter into a contract by which he waived his lack of prior knowledge of the child’s existence, nor of any rights which might thereby accrue to him; nor did the respondent intend or enter into a contract by which he obligated himself to support the child until the child reached majority. It is abundantly clear from the evidence, and the court so finds, that the respondent signed the so-called "agreement” only in order to enable his wife to place the child outside the home. It is equally clear, that the circumstances were such, that the child’s presence would, unfortunately, have placed great strain on the respondent, respondent’s wife and their marriage.
The court finds that the respondent wanted only to relieve himself of an intolerable domestic situation; the court finds that the conditions and circumstances surrounding the signing of the "agreement” were, in their effect, coercive — both as to the signing of the "agreement” and the very few payments thereunder; the court finds that the consequences of the *812 "agreement” were neither. fully nor adequately explained to the respondent. Under all these circumstances, \he court holds that the respondent did not freely, voluntarily and knowingly, undertake to support his stepchild, and that, in fact, there was no contract for such support.
The court next turns its attention to the remaining and major question in the case: Whether a stepparent is liable for the support of a stepchild of whose existence he was unaware at the time of the marriage.
Three statutes set out the stepparent’s obligation to support his stepchild:
Section 415 of the Family Court Act: "Duties to support recipient of public assistance or welfare and patients in institutions in the department of mental hygiene.
"The spouse or parent of a recipient of public assistance or care or of a person liable to become in need thereof or of a patient in an institution in the department of mental hygiene, if of sufficient ability, is responsible for the support of such person or patient, provided that a parent shall be responsible only for the support of his child or children who have not attained the age of twenty-one years. In its discretion, the court may require any such person to contribute a fair and reasonable sum for the support of such relative and may apportion the costs of such support among such persons as may be just and appropriate in view of the needs of the petitioner and the other circumstances of the case and their respective means. Step-parents shall in like manner be responsible for the support of children under the age of twenty-one years. ” (Emphasis supplied.)
Section 445 of the Family Court Act: "Order of support by relative; duration.
"(a) If the court finds after a hearing that a relative, including a step-parent, should be held responsible under section four hundred fifteen for support, the court in its discretion may make an order requiring such person to contribute a fair and reasonable sum for the support of such person.
Section 101 of the Social Services Law: "Liability of relatives to Support.
"1. The spouse or parent of a recipient of public assistance or care or of a person liable to become in need thereof shall, if of sufficient ability, be responsible for support of such person, provided that a parent shall be responsible only for the *813 support of a child under the age of twenty-one years. Stepparents shall in like manner be responsible for the support of step-children under the age of twenty-one years. ” (Emphasis supplied.)
Prior to the enactment of the Family Court Act, a stepparent’s liability was set out by section 31 of the Children’s Court Act and section 101 of the Domestic Relations Court Act. Those sections provided that a stepparent was liable for the support of a step-child who was likely to become a public charge "provided it is shown to the satisfaction of the court that such stepparent had knowledge of the minor child’s existence at the time of said step-parent’s marriage.”
In Matter of Helen S. v Stanley S. (52 Misc 2d 865), the closest case in point, the court seems to have adopted the view that the enactment of section 415 of the Family Court Act, which does not contain the above-quoted limiting language of the former statutes, indicated a legislative intent that knowledge of the child before marriage should no longer be a condition of liability. (However, because of the date of the marriage, the court there held that the case before it would be governed by section 31 of the Children’s Court Act, not by section 415 of the Family Court Act.)
It is the position of this court, that Matter of Helen S. v Stanley S. (supra) does not place sufficient emphasis upon that part of the statute (Family Ct Act, § 415) which reads: "In its discretion, the court may require any such person to contribute a fair and reasonable sum for the support of such relative”. (Emphasis supplied.)
The Committee Comments clarify the Legislature’s intent that section 415 orders be discretionary rather than mandatory: "This section consolidates parts of subdivisions 1, 4, and 5 of section 101 of the Domestic Relations Court Act and parts of subdivisions 4 and 5 of section 31 of the Children’s Court Act, but substitutes for the current mandatory language a discretionary provision. This change is designed to permit the court to avoid such injustices as compelling a daughter raped by her father to support him on his release from the imprisonment that followed the conviction of rape.” (See McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 415, p 259.)
Several cases decided under section 415 of the Family Court Act and its companion statutes demonstrate that a court will refuse to enter a support order in favor of a public charge if equity is offended thereby. Matter of Lasher v Decker, (43 *814 Misc 2d 211) was a proceeding pursuant to section 415 of the Family Court Act to compel a self-supporting adult child to support his mother. The court, observing the discretionary nature of section 415 of the Family Court Act refused in the interest of justice to require the respondent, who had been abandoned as a child, to support his mother, a public charge. In Matter of Miller v Miller (64 Misc 2d 341), the court, in the interest of fairness and in its discretion, refused to order a husband to support his wife, a public charge, when the wife gave birth to a child as a result of an extra-marital affair. In Matter of Ross v Ross (75 Misc 2d 284), the court in the interest of justice refused to enter an order pursuant to section 415 of the Family Court Act compelling a wife to support a husband whose income was supplemented by public assistance.
This court holds, that as a matter of equity, a stepparent who does not know of the existence of a stepchild at the time of the marriage should not be required to support the child, absent compelling circumstances sufficient to cause the court to exercise its discretion otherwise. (It is noteworthy that at least one case holds that the concealment of the existence of an illegitimate child gives rise to an annulment proceeding grounded on fraud. Yucabezky v Yucabezky, 111 NYS2d 441.)
Such a compelling circumstance would appear, for example, if the stepfather, in the instant proceeding, had indicated in some manner, a willingness to accept and assume responsibility for the child after learning of his existence. In such event, this court would have exercised its discretion against the stepfather and would have imposed a support obligation. However, no such circumstance exists in this case. The respondent herein continually refused to accept the stepchild into his home and, as heretofore found by the court, tried to insure that the stepchild would be placed outside the home. (Nor is there any proof in the case that the respondent himself ever supported the child while the child was in Puerto Rico. The caseworker testified that respondent’s wife told him that she sent money for the child to relatives in Puerto Rico, from time to time, and that this came from moneys her husband gave her. But, the caseworker admitted that he had no recollection as to whether the respondent stated he had supported the child in Puerto Rico, or even if the respondent knew that moneys were going to Puerto Rico for the benefit of the child.)
For sound practical reasons, and under all the circum *815 stances of this case, the court will not view respondent’s continuing cohabitation with the mother after he became aware of the child as a willingness to accept responsibility for the child. First, because there was in fact no such willingness, and second, because it is not the public policy of this State to encourage divorce. It may be noted, in this regard, that a stepparent’s obligation to support a stepchild will terminate when the stepparent divorces the child’s natural parent, even though the child is a public charge. (Matter of Elwell v Sisson, 81 Misc 2d 1070; Matter of Eckhardt v Eckhardt, 37 AD2d 629.) A support order against the stepfather in the instant case, would put further strain on this marriage and might very well cause the respondent to seek and secure a divorce. In that event, not only will the child be a public charge, but in all likelihood, so will the mother.
In brief — the respondent never having known of the existence of his stepchild at the time of the marriage, and never having taken the child into his home, and never having supported the child — is not responsible for the support of his stepchild, even though the child is a public charge.
Accordingly, the petition herein is dismissed.