472 A.2d 1158

COMMONWEALTH of Pennsylvania

v.

Andre BARKER, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 14, 1981.

Filed March 9, 1984.

Reargument Denied May 16, 1984.

Petition for Allowance of Appeal Denied Sept. 11, 1984.

Burton A. Rose, Philadelphia, for appellant.

Maxine Stotland, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CAVANAUGH, DiSALLE * and WATKINS, JJ.

WATKINS, Judge:

This case comes to us on appeal from the Court of Common Pleas, Criminal Division, of Philadelphia County and involves the defendant-appellant's appeal from a judgment of sentence of five (5) to twenty (20) years imprisonment after he was convicted by a jury of robbery, simple assault, conspiracy and prohibited offensive weapons.

The evidence produced at trial established that on February 5, 1979 at approximately 3:00 P.M., the defendant entered the Ramo Beauty Products Store at 2228–30 N. 11th Street while Artis Ray, the victim, was talking on the telephone. After observing that the defendant had entered the store, the victim told him he would be with him shortly. Both the fluorescent lights and the daylight enabled the victim to see the defendant clearly at this point. As the victim concluded his phone conversation, the defendant pulled a shotgun from his tote bag and, shoving it into his face, announced a hold-up. He pushed the victim into the rear room of the store and ordered him to kneel. The defendant then hit him on the forehead with the barrel of the gun. The victim fell forward, breaking the frame of his glasses. Defendant knelt next to him and, facing him, threatened to kill him. Defendant then tied him up with clipper cords from the beauty parlor. At that point, a second person entered the rear room of the store and defendant handed him the gun. The second man kicked the

* DiSALLE, J., did not participate in the consideration or decision of this case.

victim. The defendant then began to tear the victim's clothes apart in order to determine if he had money in his pockets. The perpetrators searched his wallet and card case and took a dollar bill as well as a blank check which they insisted he complete. Two more men entered the store and were joined by defendant and the second male. The victim watched them fill empty boxes with electric curlers, cords, combs, brushes, and other beauty equipment. Defendant then asked him for the key to his car and joined the others in packing the "loot" in the car. The victim then untied himself as they loaded the car and watched the four figures as they drove away in his 1978 Omega. He called the police immediately to report the robbery. When a policeman arrived, he described the car and license number and recounted the incident to the police.

As a result of several radio calls, the Omega was spotted quickly by the police. When the driver saw the police behind him, he veered into the right front fender of the police car and then, after hitting the rear of a Cadillac, jumped out of the car and ran away, successfully eluding the police.

When the car was finally stopped, Officer James McDevitt discovered a .32 caliber automatic pistol on the seat between defendant, seated in the left rear seat, and co-defendant Wright. Officer Rudolph Meritt observed a blue tote bag between defendant's legs with a shotgun barrel protruding. The shotgun shells were retrieved from the bag. Finally, the merchandise stolen from the victim's store was found in the trunk of the car in which the three males had been sitting. Within ten minutes of the call to the police, two groups of males were brought back for identification by the victim. He dismissed the first group but identified the second group of three males, which included defendant, as his assailants. The victim was subsequently taken to the Medical College Hospital of Pennsylvania for examination of the bump on his head caused by the blow from the butt of defendant's shotgun.

On November 29, 1979, the jury returned a verdict of guilty of robbery, simple assault, conspiracy and prohibited offensive weapons.

■ On appeal, the appellant contends that the trial court erred when it refused to admit into evidence statements of the co-defendants' given to police shortly after their arrest. Defendant claims that said statements should have been admitted into evidence as declarations against penal interests. In the statements the co-defendants' implicated themselves in the aforesaid crimes, but claimed that defendant did not commit same, but, rather, was picked up in the automobile by them at a time subsequent to the robbery. Defendant argues that the complete statements of both co-defendants' should have been admitted at trial. We note that the trial court had given the defendant ample opportunity to produce both co-defendants at his trial. Subpoenas were issued for them and a process server hired to find them, but neither co-defendant could be found by the defendant.[1]

In *Commonwealth v. Colon,* 461 Pa. 577, 337 A.2d 554 (1975), cert. denied 423 U.S. 1056, 99 S.Ct. 788, 46 L.Ed.2d 645 (1976), a plurality opinion of our Supreme Court held that a declaration against penal interest may contain both exculpatory and inculpatory facts and that only the inculpatory portion of the statement is admissible as an exception to the hearsay rule because of its inherent trustworthiness. See also *Commonwealth v. Nash,* 457 Pa. 296, 324 A.2d 344 (1974). In the instant case the portion of the co-defendants' statements to the effect that they merely met the defendant after the crime had been committed did not constitute an admission to any additional crimes that subject them to any additional penalties. It was not contrary to their penal interests to assert that they and a third companion had acted without the defendant. In *Commonwealth v. Ayala,* 277 Pa.Superior Ct. 363, 419 A.2d 1187 (1980) we recognized

1. Whether or not defendant's efforts to locate the co-defendants were sufficient enough to permit us to find that they were "unavailable" is not decided here.

the inherent unreliability of a confession exculpating possible accomplices at no cost to the defendant. The portion of co-defendants' statements exculpating the defendant are not contrary to their penal interests and were therefore properly held to be inadmissible by the court below. We see no valid reason to distinguish the instant case from *Colon* as the inherent unreliability of such statements is the reason that they have been held inadmissible and co-defendants' statements in this case are no more reliable than were those with which the Supreme Court dealt in *Colon*. We hold that the court below ruled correctly when it refused to admit the co-defendants' statements.

The defendant also claims that the court's charge to the jury constituted reversible error in that the court charged the jury on an accomplice theory. Defendant argues that the evidence did not support such a charge and that the court failed to clarify the charge. The court charged on accomplice liability as follows:

Now, in this particular case part of the theory under which the Commonwealth is proceeding as a matter of law involves or will require some explanation on my part about the accomplice theory of liability. It means simply this: Because there is reference here to the fact that there were several people involved in this incident, you may find this defendant guilty of the crime of simple assault or robbery without finding that he personally performed the acts or engaged in the conduct required for the commission of the crime. This is what the law calls being responsible for the acts or conduct of your accomplice.

A defendant is still guilty of a crime if he is an accomplice of another person who commits that crime. The defendant is an accomplice if with the intent of promoting or facilitating the commission of the crime he does any one or more of the following things: He solicits, or commands, or encourages, or requests, or permits the other person to commit, or he aides, or agrees to aide, or

attempts to aide the other person or persons in the planning or commission of either of those two offenses. However, a defendant is not an accomplice if before the other person commits the crime he stops his own efforts to promote or facilitate the commission of the crime and wholly deprives his previous efforts of effectiveness in the commission of the crime.

In other words, he withdraws from being involved wholly and not partially.

If he is partially involved along with others in the commission of one or more of the crimes I just mentioned, then, he is guilty even though he did not do all of the acts alleged.

You may find the defendant guilty of the crime of simple assault and/or robbery on the theory that he was an accomplice as long as you are satisfied beyond a reasonable doubt that the crime was committed and that the defendant was an accomplice of one of the persons who committed it.

It does not matter whether the person you believe committed the crime has not been prosecuted or convicted, or has been convicted of different crime or degree of crime, or has immunity from prosecution, or even if that person was acquitted.

Further, ladies and gentlemen, you as jurors need not agree on the relative roles played by the defendant and his accomplice or accomplices provided each juror is satisfied that the crime was actually perpetrated by the defendant himself or by an accomplice of the defendant.

■ Said instructions adequately set forth the law with regard to accomplice liability. See *18 C.P.S.A. 306.* Furthermore, the testimony established that the criminal acts were committed by defendant and three other accomplices acting in concert. The charge was proper and the evidence supported it. No further clarification was necessary.

■ Next, the defendant argues that the court erred in refusing to supplement its charge with an instruction con-

cerning the evaluation of identification testimony. We note that Artis Ray, the victim, made a positive identification of the defendant as the one who first entered his establishment and was the lead man in the robbery and related offenses. We note that Ray was first shown other individuals by the police and positively excluded them as the perpetrators of the crimes. We also note that the victim had ample opportunity to observe the defendant during the fifteen minute episode which took place in an area where he had the opportunity to observe his assailants clearly and that his identification of the defendant as the assailant remained unshaken after vigorous cross-examination. Where a witness' opportunity to identify the accused is good and his identification remains positive and unshaken even after cross-examination, the witness' testimony is sufficient proof of identity. *Commonwealth v. Anderson,* 265 Pa.Superior Ct. 494, 402 A.2d 546 (1979). Under such circumstances we see no need for the cautionary instructions requested by the defendant despite his arguments with respect to the fact that the victim had not remembered the color of his trousers on the day of the incident.

■ Finally, the defendant argues that his sentence is excessive. Prior to sentencing the court had ordered a pre-sentence report and a mental health evaluation. In the sentencing colloquy the court below stated that he had read the aforesaid reports and had considered them. He also stated that he had taken into account the age of the defendant, this prior record, the nature and the degree of the offenses of which he had been convicted, and the needs of the defendant. With respect to the incident itself the court stated that:

"We are talking about a shotgun robbery on a very old man with an unnecessary amount of terror and fear involved..."

With respect to the needs of the defendant, the court stated:

"Well, I don't think we would be doing him a service if he wasn't incarcerated for at least some reasonable period of

time in a structured atmosphere where he can get the kind of psychotherapy that he needs."
We are convinced that the sentence was the result of the court's thoughtful consideration of all the factors relating to the defendant and the offenses of which he was convicted. See *Commonwealth v. O'Brien*, 282 Pa.Superior Ct. 193, 422 A.2d 894 (1980). The court did not err in imposing the sentence that it did.

Judgment of sentence affirmed.