## Risch v. Risch

*Franklin E. Kepner Jr.,* for plaintiffs.
*Michael R. Lynn,* for defendant.

MYERS, *P.J.,* September 11, 1989—Plaintiffs have filed the instant complaint seeking custody of defendant's natural child, L.R., age 6 years. Defendant's husband is now deceased, having been shot and killed by defendant's paramour at the time.[1] Plaintiffs are the aunt and uncle of the child, with the male plaintiff being the brother of defendant's deceased husband.

It should be noted that a second natural child of defendant, T.R., age 12 years, was voluntarily placed in the custody of plaintiffs by defendant on or about December 29, 1988, where she has remained. Since the parties in interest have agreed to accede to T.R.'s choice to continue to reside with plaintiffs at this time, the issue now before the court relates solely to the custody of L.R.

Hearings were held on April 24 and 25, 1989 on that issue and following submission of briefs, the matter is now before us for disposition.

In his brief, defendant's counsel raises the somewhat novel issue of plaintiffs' standing to bring this action, i.e. the right of a non-parent or non-grandparent to bring a complaint for custody of a minor child against a parent. Therefore, the

---

1. Defendant's paramour, Gary Shires, was found not guilty by reason of temporary insanity on the related murder charges and has evidently maintained a continuing relationship with defendant.

threshold question we must first address concerns what legal standing, if any, plaintiffs possess in this matter.[2]

In *Helsel v. Blair County Children & Youth Services,* 359 Pa. Super. 487, 519 A.2d 456 (1986), the Superior Court stated, through dicta, that a half-brother lacked standing to bring a custody action by means of a writ of habeas corpus, because the half-brother lacked a prima facie right to custody.

While we recognize the procedural differences between *Helsel, supra,* and the instant action, the legal principles are analogous. Whether the custody action is started by filing a complaint or a writ of habeas corpus, one must have standing to do so.

The *Helsel* court stated that blood relationship did not automatically confer a right of custody upon the half-brother because: (1) he was not a parent, and (2) he was not acting "in loco parentis" to the child.

Thus, in the instant action, since plaintiffs are obviously not the natural parents of L.R., the subsequent question evolves as to whether or not they were acting "in loco parentis" to the child.

The phrase "in loco parentis" refers to a person who puts himself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status "in loco parentis" embodies two ideas; first, the assumption of parental status; and second, the discharge of parental duties.

---

2. Incomprehensibly, this issue was not timely raised pretrial by defendant as a legal defense. Had she done so, the question would have been resolved at that point. However, the issue was not waived or rendered untimely under Pa.R.C.P. 1032(1) under these circumstances. In any event, plaintiffs failed to object or respond to the issue when raised by defendant in the brief.

*Morgan v. Smith,* 429 Pa. 561, 241 A.2d 531 (1968). *Klein v. Sarubin,* 325 Pa. Super. 363, 471 A.2d 881 (1984).

In this case, there is nothing in the record upon which to bottom a conclusion that plaintiffs have occupied or presently hold a status of "in loco parentis" to L.R. It is true that plaintiffs formerly resided as neighbors to defendant, her husband and her children. Plaintiffs occasionally provided baby-sitting services for L.R. However, the child never resided with plaintiffs, and the record is devoid of any evidence that plaintiffs were involved in any aspect of the child rearing or the parental decision-making process with regard to L.R.

Accordingly, no type of parental relationship has been forged between plaintiffs and L.R. Therefore, plaintiffs have failed to act "in loco parentis" to this child. See *Klein v. Sarubin, supra.* Thus, it is clear that plaintiffs have acquired no standing in this action under either common law or case law.

Therefore, the final question remains as to whether or not plaintiffs have acquired standing to bring this action through express statutory authorization.

In 1981 the legislature adopted the "Custody and Grandparents Visitation Act," 23 Pa.C.S. §§1001 to 1015, repealed and amended in 1985 as set forth in 23 Pa.C.S. §5301 et seq.

In these acts the legislature modified and expanded custody and visitation rights to include *grandparents* (italics ours) under certain express limited situations as follows:

(1) When a parent is deceased (section 1012).

(2) When parents' marriage is dissolved (section 1013).

(3) When the child has resided with the grandparents for a period of 12 months or more (section 1014).

By codifying grandparents' visitations rights into statutory provisions, the legislature obviously intended to limit standing to obtain legal custody and/or visitation rights to those classifications of persons specifically enumerated, i.e. grandparents. See *Lindley v. Kowalske,* 26 D.&C. 3d 636 (1983).

In the Acts of 1981 and 1985 there was no mention in those statutes pertaining to aunts or uncles, or to any other relationship or non-relationship to provide standing to bring a custody action against a parent or parents. Had the legislature intended to confer a prima facie right of custody upon aunts or uncles, or upon any other relative or non-relative, they would have specifically included such a provision in the statute.

Certainly, the limiting action of the legislature in this area of the law is understandable and logical. To extend custody standing to aunts and uncles, distant relatives or non-relatives against parents would tend to open the flood gates to all sorts of vexatious and frivolous custody actions, especially in view of the fact that other remedies do exist under appropriate circumstances.

Therefore, in this case plaintiffs have acquired no standing to pursue this action through statutory authorization.[3]

_____

3. For reasons best known to plaintiffs, this action was not brought under the Juvenile Act under its dependent child provisions, 41 Pa.C.S. §6301 et seq. Therefore, we will not address that issue since the same is not relevant in this proceeding.

Accordingly, since plaintiffs have no standing under any circumstances to bring this custody action against defendant parent, plaintiffs' case must fall.

Needless to say, the background facts and circumstances that have given rise to this custody case are bizarre, unique, revolting and unfortunate. They have also precipitated in part two corollary matters that bear further comment.

First, the local press in this, and certain other cases, has developed a propensity to tell this court editorially in advance how to decide a given case. They have done so despite their obvious lack of legal background, education or training, or judicial experience. That, together with their often limited or one-sided knowledge of all the relevant facts, severely impairs their ability to determine fairly or accurately the merits of any lawsuit.

May we suggest that they wait until a decision is rendered, after which they have virtually unlimited constitutional freedoms to comment, dissent, and criticize—fairly or unfairly. At that point the courts have traditionally and zealously upheld and protected those constitutional rights of the media and will continue to do so.

Secondly, that policy has apparently produced a growing tendency among certain litigants to plead their side of the case publicly in the press—before a decision has been rendered by the court—in an obvious and transparent attempt to generate public opinion to influence or pressure the court to decide the case in their favor.

We would remind both that our judicial system is constitutionally mandated and dedicated to a decision-making process that is fair and impartial to both sides and in accordance with the applicable law. It is a system that is independent and free from

the influences and pressures of public opinion, whether its decision may be popular or unpopular. Somehow, we hope it always stays that way.

Without further comment, we make the following

## ORDER OF COURT

And now, September 11, 1989, it is hereby ordered that plaintiffs' action be dismissed. Accordingly, plaintiffs' subsequent contempt action is hereby rendered moot. Counsel for the parties are directed to attempt to effectuate reasonable and appropriate cross-visitation between the defendant's two minor children and report back to the court within 30 days from this date.