471 A.2d 881

**Elayne KLEIN**

v.

**Daniel SARUBIN, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 11, 1983.

Filed Feb. 10, 1984.

366

Joyce Ullman, Philadelphia, for appellant.

Sandor Engel, Allentown, for appellee.

Before SPAETH, President Judge, and MONTEMURO and POPOVICH, JJ.

MONTEMURO, Judge:

This is an appeal from an order granting appellee's petition for an increase in support, and denying appellant's petition for a reduction, entered in the Court of Common Pleas, Lehigh County.

Appellant and appellee were married in 1965. Two children were born of the marriage, Scott in 1969, and Allison in 1971. The parties were divorced in 1976. Prior to that, in 1975, appellant and appellee entered into an agreement whereby appellant was to pay $200.00 per week for the support of the parties' two children. This subsequently became part of a court order.

Shortly after the divorce, appellee remarried. The children have resided with appellee since the parties' separation, and currently reside with her, her husband, Murray Klein, and a child of her present marriage, Julia.

In January of 1981, appellee filed a petition for modification of the support order, seeking an increase in support for

the two children. Appellant subsequently filed a petition for modification, seeking a decrease in the support order.

Both petitions were consolidated for a hearing before the Honorable David E. Mellenberg. The court below found that appellee's expenses in connection with raising the children had increased since the entry of the original order, and that this increase was due mainly to the fact that the children had advanced in age and were now pre-teenagers. In addition, the older child, Scott, has a learning disability, requiring special schooling at an increased cost since the time of the original order. Regarding the financial circumstances of the parents, the court found that appellant's net income had increased from $46,703.38 in 1976 to approximately $81,000.00 in 1980. Appellant, who is a physician, had also acquired assets of $61,000.00 in that same period. Appellee is presently unemployed, and at home caring for the child of her present marriage.

■ At the hearing in the court below, appellant attempted to pursue, and did pursue to the extent permitted, a line of inquiry concerning appellee's husband's relationship with the children. This was done in an effort to show that appellee's husband had assumed the status of *in loco parentis* to the children. Appellant's theory is that appellee's husband stands *in loco parentis* to the children, and as a consequence has a legal obligation to support them. The general rule is that a stepparent has no legal obligation to support his or her stepchild. *Commonwealth ex rel. Hagerty v. Eyster*, 286 Pa.Super. 562, 429 A.2d 665 (1981). Appellant's first argument on appeal is that the court below erred in not permitting him to fully develop this theory. We disagree.

■ Certainly it is true that the doctrine of *in loco parentis* status exists within the Commonwealth. "The status of *in loco parentis* embodies two ideas: first, the assumption of parental status, and second, the discharge of parental duties." *Commonwealth ex rel. Morgan v. Smith*, 429 Pa. 561, 565, 241 A.2d 531, 533 (1968). Exist-

ence of such a relationship is largely dependent upon the intention of the person assuming the parental status. *D'Auria v. Liposky*, 197 Pa.Super. 271, 177 A.2d 133 (1962).

■ While we acknowledge that in certain instances a stepfather who lives with his wife and her natural child may assume the relationship to the child of *in loco parentis*, *Spells v. Spells*, 250 Pa.Super. 168, 378 A.2d 879 (1977), and also recognize that in particular instances, a support obligation has been imposed as a consequence, *Commonwealth ex rel. Bulson v. Bulson*, 278 Pa.Super. 6, 419 A.2d 1327 (1980); *Commonwealth v. Cameron*, 197 Pa.Super. 403, 179 A.2d 270 (1962), we rule that the doctrine has no place in the present proceedings.

■ In his brief, appellant directs the court to two Pennsylvania cases in which a support obligation has been imposed on a stepparent, based on *in loco parentis* status. *Bulson v. Bulson, supra; Commonwealth v. Cameron, supra.* Both are distinguishable from the case *sub judice.* *Bulson* involved an appeal from an order of spousal support. Appellant therein argued on appeal that the lower court had abused it discretion when it took into account the cost to appellee of supporting a child of a prior marriage. We affirmed, discussing the doctrine of *in loco parentis*, and stating that the lower court had, "ample evidence from which to infer that appellant had assumed the obligation himself when he married appellant, knowing that she had a child in need of support." *Bulson v. Bulson, supra* 278 Pa.Super. at 10, 419 A.2d at 1329. In *Cameron*, the stepfather and the child's mother had executed a written release in favor of the child's father. On appeal, we ruled that by doing so, the mother and stepfather, "had assumed a primary obligation for the support of the child, and unless and until the child becomes a burden on the State, their agreement to assume a position of *loco parentis* must stand." *Cameron, supra* 197 Pa.Super. at 409, 179 A.2d at 273. That the rationale of each of these cases is inapposite here is clear. Here, appellee and her husband never executed an agreement releasing appellant from his support obligation.

As to distinguishing *Bulson,* appellee's present husband did not marry her knowing that she had children in need of support; to the contrary, he married her while a support order against the children's father was in existence. *Cf. Commonwealth ex rel. Stack v. Stack,* 141 Pa.Super. 147, 15 A.2d 76 (1940).

■ Although appellant has been somewhat ingenious in his terminology, his argument in actuality is a thinly veiled attempt to interject a lack of custody and visitation as a basis for being relieved of his support obligation. This court has rejected such a notion on numerous occasions. *Commonwealth ex rel. Mickey v. Mickey,* 220 Pa.Super. 39, 280 A.2d 417 (1971); *Commonwealth ex rel. Crane v. Rosenberger,* 212 Pa.Super. 144, 239 A.2d 810 (1968); *Commonwealth v. Mexal,* 201 Pa.Super. 457, 193 A.2d 680 (1963). The court below was correct in refusing to allow appellant to do implicitly that which this court has explicitly disapproved.

■ Appellant's questioning at the hearing in the court below was solely of appellee. Nowhere does he suggest that he attempted to call her husband as a witness. The questions which were asked or attempted to be asked relate to the children's occasional use of the stepfather's surname; the extent of parental control exercised by *both* appellee and her husband; and alleged interference with visitation perpetrated, once again, by *both* appellee and her husband. Neither appellant's questioning in the court below, nor his argument on appeal, focuses on the key factor for determining *in loco parentis* status—the intentions of the children's stepfather, Murray Klein. *D'Auria v. Liposky, supra.*

■ Moreover, even assuming that appellant had properly attempted to demonstrate *in loco parentis* status, we note here by way of dictim that we can conceive of no policy reason for permitting a natural parent to employ such a tactic in order to relieve himself of his support obligation, and impose it on a stepparent, where, as here, the natural

parent nowhere suggests that he is unable financially to provide necessaries for his children.[1]

We now turn to appellant's second argument. Appellant phrases the issue in terms of whether the court below erred in not requiring appellee and her husband to produce their most recent joint income tax return on the basis that the financial ability of the appellee and her husband to contribute to the support and maintenance of the children was irrelevant. Appellant's phrasing of the issue is misleading.

■ At the time of the hearing in the court below, appellant was in possession of the joint returns of appellee and her husband for 1977, 1978 and 1979. Appellee and her husband had obtained an extension from the Internal Revenue Service for filing their 1980 return; consequently, at the time of the hearing it had not yet been prepared. What the court below refused to do was to continue the proceedings until the return was prepared. The court nowhere stated that "the financial ability of *appellee* and her husband to contribute to the support and maintenance of the children was irrelevant." (emphasis added).

As we have rejected appellant's argument regarding *in loco parentis* status as to appellee's husband, we are left with the general proposition that a stepparent has no legal obligation to support stepchildren. *Commonwealth ex rel. Hagerty v. Eyster, supra; Commonwealth ex rel. Mainzer v. Audi,* 266 Pa.Super. 122, 403 A.2d 124 (1979). In *Mainzer,* however, the court did state that:

Although appellant's present husband has no duty to support the children of appellant's first marriage and his separate assets and earning may not be considered part of appellant's financial resources the court could properly consider the new husband's voluntary contributions to the

1. We are aware of the existence of a Common Pleas Court case which holds that the doctrine of *in loco parentis* is not applicable to support cases. *Yohe v. Yohe,* 11 D & C 3d 472 (1979). We decline to accept such a broad proposition.

family budget in computing appellant-mother's 'ability to pay.' *See Commonwealth ex rel. Travitzky v. Travitzky,* 230 Pa.Super. 435, 326 A.2d 883 (1974).

*Mainzer v. Audi, supra* 266 Pa.Super. at 124, 403 A.2d at 125. A child's mother, of course, has an obligation to contribute to his or her support. *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974); *Costello v. LeNoir,* 462 Pa. 36, 337 A.2d 866 (1975).

Armed with these legal principles, we now turn to the evidence. It reveals that appellee's earning capacity was inquired into at the hearing. (N.T. April 10, 1981, pp. 125–127). In addition, appellee was questioned by the court as to why she was not presently working. She responded that the basic reason was because she was taking care of the two-year old child of her present marriage. (N.T. April 10, 1981, pp. 131–132). Appellant, on appeal, makes no complaint regarding any of this evidence.

We fail to see, in light of that which has just been discussed, how the 1980 tax return was necessary for the hearing court's determination. As stated above, a court may consider a new husband's voluntary contributions to the family budget in computing a mother's ability to pay. *Mainzer v. Audi, supra.* However, in this case, regardless of appellee's husband's income, and even assuming that he was paying *all* of her expenses, she still would not be able to contribute to the children's support because she has no income with which to do so. Her present inability to contribute was established to the satisfaction of both appellant and the court by the presence of a two-year old child at home requiring her care. *Cf. Bender v. Bender,* 297 Pa.Super. 461, 444 A.2d 124 (1982); *Commonwealth ex rel. Wasiolek v. Wasiolek,* 251 Pa.Super. 108, 380 A.2d 400 (1977). Accordingly, we decline to rule that the court below abused its discretion in failing to continue the hearing until appellee's 1980 tax return was produced.

Order affirmed.