496 A.2d 816

**COMMONWEALTH of Pennsylvania ex rel. Florence McNUTT**

v.

**James W. McNUTT, Appellant.**

Superior Court of Pennsylvania.

Argued March 25, 1985.

Filed Aug. 2, 1985.

322

Sanford S. Finder, Washington, for appellant.

Phillip J. Binotto, Jr., Washington, for appellees.

Before DEL SOLE, MONTGOMERY and BUCHER *, JJ.

DEL SOLE, Judge:

This is an appeal from the portion of the Order of the Court of Common Pleas of Washington County, by which James McNutt, the Appellant, was ordered to pay $75 a month for the support of Melissa McNutt, the natural daughter of his former wife. The facts in this case are as follows:

James McNutt married Florence McNutt, the Appellee, on December 28, 1969. At the time of the marriage, Florence McNutt had one child, Melissa, who was two months old. Florence was Melissa's natural mother but James was not her natural father. The whereabouts of the natural father are unknown. The parties had a child during the marriage, Martin, born in 1973. In 1974 or 1975, the parties visited a lawyer to discuss the possibility of James McNutt adopting Melissa, but Mr. McNutt did not proceed with the adoption. At the time of the parties' divorce in 1977, James McNutt agreed to pay $150 a month for the support "of their minor child". Neither Melissa's nor Martin's name appears in this separation agreement. The Appellant continues to visit both children after the divorce and Melissa continues to call him "Daddy". In 1982, Florence McNutt brought a complaint in support, seeking to increase support payments, arguing that the Appellant's payments were for both children, not just for Martin. The trial court found that the Appellant had acted in loco parentis toward Melissa and was therefore responsible for her support. McNutt does not appeal the trial court's support order for Martin in the amount of $150 a month but he appeals that part of the order requiring him to pay $75 a month in favor of Melissa

---

* Judge Wilson Bucher, Senior Judge of the Court of Common Pleas of Lancaster County, Pennsylvania, is sitting by designation.

on the grounds that he is not her father and therefore is not liable for her support.

The trial court found that the Appellant acted in loco parentis both before and after the dissolution of the marriage and this is a finding of fact we will not disturb. We do not agree however that the Appellant's past and continued love and devotion to his former stepchild carry with it the duty to financially support Melissa.[1] This would be carrying the common law concept of in loco parentis further than we are willing to go. There is authority in other jurisdictions for the proposition that a stepparent who stands in loco parentis may be held liable for the support of a child during the marriage. *Mason v. Zolonsky,* 251 Iowa 983, 103 N.W.2d 752, 756 (1960); *Brummitt v. Commonwealth,* 357 S.W.2d 37 (Ky.1962).[2] However, this obligation does not survive the dissolution of the marriage of the child's natural parent and stepparent. The general rule is that no legal duty rests upon the stepparent to support after the termination of the marriage. *Needel v. Needel,* 15 Ariz.App. 471, 474, 489 P.2d 729, 732 (1971); *McDowell v. McDowell,* 378 S.W.2d 814 (Ky.1964); *Brown v. Brown,* 287 Md. 273, 284, 412 A.2d 396, 402 (1980); *Com. of Soc. Serv. of N.Y. on behalf of Vasquez v. Russell,* 85 Misc.2d 809, 380 N.Y.S.2d 998 (1976).[3]

**1.** A stepfather, by definition, is the "husband of one's mother." Since Mr. McNutt is no longer the husband of Melissa's mother, he is no longer her stepfather. *See Black's Law Dictionary.*

**2.** Some states have enacted statutes requiring stepparents to provide support when a minor is about to go on public assistance. *See* Hawaii Rev.Stat. § 577–4 (1976); Ky.Rev.Stat.Ann. § 205.310 (Baldwin 1981); N.Y.Fam.Ct. Act (29A) § 415 (McKinney 1983); Wis.Stat.Ann. § 49.-195 (West Supp.1984–1985).

**3.** For a discussion of this general rule which terminates stepparent support obligations upon dissolution of the marriage, *see* Mahoney, *Support and Custody Aspects of the Stepparent-Child Relationship,* 70 Cornell L.Rev. 38, 52–58 (1984). The author argues for change of this rule, noting that in the United Kingdom, by statute divorce courts are permitted to require a stepparent to continue support of a former stepchild. We have weighed the arguments carefully and are not persuaded to follow this rule. We believe the undesirable results of such a rule, as discussed in the text of our opinion above, would

If we were to hold that a stepparent acting in loco parentis would be held liable for support even after the dissolution of the marriage then all persons who gratuitously assume parental duties for a time could be held legally responsible for a child's support. It is not uncommon for a grandparent, an aunt or uncle or an older sibling to assume responsibilities for parenting when the natural parents are absent. These acts of generosity should not be discouraged by creating a law which would require anyone who begins such a relationship to continue financial support until the child is eighteen years old.

The Appellant has continued his caring relationship with Melissa even though his marriage to her mother has ended. He does not assume the benefit however, of claiming her as a dependent on his tax return. Nor would he, under the intestate laws of Pennsylvania, share in Melissa's estate if she were to die while she is a minor. We cannot extend the law so far as to hold a former stepparent financially responsible for a child whom he loves and cares for but has not adopted.

Appellee argues that we are required to find for her because of the holding of *Bulson v. Bulson*, 278 Pa.Super. 6, 419 A.2d 1327, 1329 (1980). We distinguish *Bulson* on the grounds that it is a spousal support case and not a child support case. Although there is dicta in *Bulson* to support Appellee's position, the case stands for the proposition that it is correct to consider a wife's expenses for rearing her child when assessing husband's spousal support payments, since he knew when he married her that she had this responsibility. The *Bulson* court was presented with a different question from the one before us in the instant case and does not control. We therefore reverse the order of the trial court insofar as it requires James McNutt to pay child support in favor of the child Melissa.

Order reversed in part and affirmed in part.

outweigh the salutory outcome of keeping some children off the public assistance rolls.