544 A.2d 63

**Linda H. DeNOMME, Appellant,**

v.

**Thomas K. DeNOMME, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 23, 1988.

Filed June 21, 1988.

---

Margaret P. Joy, Pittsburgh, for appellant.
Rosemary Markham, Pittsburgh, for appellee.

Before McEWEN, DEL SOLE and JOHNSON, JJ.

JOHNSON, Judge:

This is an action for child support. Appellant Linda H. DeNomme (Wife) appeals from the denial of her exceptions to the hearing officer's recommendation that appellee Thomas K. DeNomme (Husband) is not obligated to support his ex-stepson. We affirm.

The parties were married in 1975, separated for the final time in February of 1983 and divorced in April of 1983. This was the second marriage for both. Husband supports a child from his first marriage. From his marriage with Wife, Husband also has a natural child, David Matthew DeNomme (Matthew), whom he also supports. James De-Nomme (James), the child whose support is at issue in the present case, is the child of Wife's previous marriage to James Q. Arthur of Wood County, West Virginia. Wife and Arthur were divorced in 1975. Although Arthur was granted custody of James, Wife retained physical custody of the child and brought him to Pittsburgh, Pennsylvania. Wife was granted custody of James in 1977. N.T., 6/4/82 at 28.

It is undisputed that, during the eight-year marriage, Husband expressly assumed full parental obligation for James, including financial support. James was two years old when the parties married. James was known as James DeNomme at Husband's insistence. N.T. of 6/4/82 at 40. Husband and Wife sought legal counsel concerning Husband's adoption of James, but the plan had not reached fruition by the time of the separation.

After the parties' initial separation, in 1982, the Honorable Lawrence W. Kaplan, in his July 13, 1982 ruling on exceptions to the Hearing Officer's recommendations for support and alimony *pendente lite*, found Husband obligated to pay support because he stood *in loco parentis* to James. Judge Kaplan subsequently granted the parties' divorce by decree of April 15, 1983. On May 9, 1983 Hearing Officer Beatrice Longo ordered support for both children but also directed Wife to pursue a support action in

West Virginia against the natural father. In response to Husband's exceptions to the recommendations for support, the Honorable William L. Standish ordered, on June 27, 1983, that Husband pay support for both children. Wife initiated an action under the Uniform Reciprocal Enforcement of Support Act, 23 Pa.C.S. §§ 4501 *et seq.*, against the natural father but did not pursue it. Husband's appeal to this Court was subsequently dismissed for failure to prosecute.

Subsequently, both parties filed petitions for modification of support and for contempt through 1985 and 1986. The 1986 contempt claims were consolidated with the economic claims in the divorce and equitable distribution proceeding before the Honorable R. Stanton Wettick. On September 25, 1986 Judge Wettick filed his opinion and order disposing of all issues before him. He ruled that no prior disposition in the case resolved the issue of whether Husband was permanently obligated to provide support for James.

Judge Wettick then referred Wife's request for child support for James to the Hearing Officer. Recommendations were filed following a hearing on February 7, 1987 in which it was determined that Husband was not obligated to support James. Husband was to provide alimony and support of $900.00 for Wife and Matthew only, plus two-thirds of the unreimbursed medical, dental and psychological costs for Matthew, not to exceed $100.00 per month. Wife filed exceptions on February 18, 1987 challenging, among other findings, the Hearing Officer's finding that Husband was not obligated to support James. She argued that prior rulings in the course of the controversy were to the contrary and thus established a law of the case. She also disputed the findings of the Hearing Officer that she had failed to vigorously pursue James' natural father for support.

Following the filing of exceptions, the trial court dismissed the exceptions by order of April 27, 1987. This appeal followed.

Wife raises these issues on appeal:

1. Whether a stepfather, who voluntarily and expressly assumed the full obligation to support his wife's natural child of a previous marriage, on which assumption the wife relied by not seeking child support from the child's natural father, which has resulted in the natural father being permanently released from his support obligation due to laches, stands *in loco parentis* with respect to the child after the parties' divorce.

2. Whether *McNutt v. McNutt*, 344 Pa.Super. 321, 496 A.2d 816 (1985), should be applied retroactively to the instant case, where it was decided after the parties' divorce and after a lower court ruling that appellee stands *in loco parentis* with respect to the child.

3. Whether the two prior determinations of the lower court that the stepfather stands *in loco parentis* are the law of the case and are therefore binding on the lower court.

4. Whether the lower court abused its discretion in approving the Hearing Officer's recommendations with respect to appellant's earning capacity, appellee's earnings, the deviation below the guideline amount, and the award of medical expenses.

■ Wife's primary argument is that husband should be equitably estopped to deny his support obligation. She claims that his actions induced her to rely upon him exclusively as the parent of her child and to abandon her claims against the natural father. No Pennsylvania case applies such a doctrine. The general rule is that a stepparent has no legal obligation to support stepchildren. *Klein v. Sarubin*, 324 Pa.Super. 363, 471 A.2d 881 (1984). It is the natural parent's absolute duty to do so. *Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974). The courts of this Commonwealth have found an exception where the stepparent voluntarily assumes parental status and assumes parental duties; in this, known as the *in loco parentis* status, "the rights and liabilities arising out of that relation are, as the words imply, exactly the same as between parent and

child." *Spells v. Spells,* 250 Pa.Super. 168, 172, 378 A.2d 879, 882 (1977) (en banc) (citations omitted).

■ Because the policy is to encourage gratuitous assumption of responsibility by stepparents, courts are reluctant to extend the duty of support beyond marriage. The general proposition derived from this public policy is that, after divorce, no legal duty rests upon the stepparent. *Commonwealth ex rel. McNutt v. McNutt,* 344 Pa.Super. 321, 496 A.2d 816 (1985). Courts in other jurisdictions have found an equitable estoppel exception to this general rule where the stepparent's actions have caused the spouse to abandon her claims against the natural parent, resulting in these claims being barred by law. The New Jersey Supreme Court adopts this rationale in *Miller v. Miller,* 97 N.J. 154, 478 A.2d 351 (1984). Wife asks that we apply the reasoning in *Miller* to this case and to impose a support obligation upon Husband.

In *Miller,* the husband supported his wife's two daughters from a previous marriage for the course of their seven-year marriage. The wife alleged that the husband had intentionally fostered the girls to rely on him as their natural father to their emotional and financial detriment. The trial court agreed and required him to pay child support. In reversing and remanding, the supreme court emphasized that the equitable estoppel doctrine should be applied with caution so as not to discourage voluntary support of children by a stepparent. Finding insufficient evidence before it to establish the elements of equitable estoppel, the court remanded for an evidentiary hearing, stating the wife's burden thus:

> To prove equitable estoppel, the custodial parent has the burden to establish not only representation of support and reliance but also detriment, i.e., that the children will suffer future financial detriment as a result of the stepparent's representation or conduct that caused the children to be cut off from their natural parent's financial support. Matrimonial cases are extremely fact-sensitive because each case involves a unique set of interpersonal

relationships. The burden of establishing economic detriment depends on the facts of the particular case.

For example, at the final hearing if the custodial parent demonstrates that he or she (1) does not know the whereabouts of the natural parent; (2) cannot locate the other natural parent; or (3) cannot secure jurisdiction over the natural parent for valid legal reasons, and that the natural parent's unavailability is due to the actions of the stepparent, a trial court could hold that the stepparent is equitably estopped from denying his or her duty to support the children.

*Miller v. Miller*, 97 N.J. at 168–69, 478 A.2d at 358–59. We disagree with Wife that application of this test to the facts of the case before us would require us to impose a support obligation upon Husband.

■ Our standard of review in considering a trial court's decision in a child support action is clear:

A child support order will not be disturbed unless the trial court committed an abuse of discretion. An abuse of discretion is more than an error of judgment. It must be a misapplication of the law or an unreasonable exercise of judgment.

*Scheidemantle v. Senka*, 371 Pa.Super. 500, 505, 538 A.2d 552, 555 (1988) (citations omitted). The equitable estoppel issue was argued in the trial court, and Judge Kaplan addressed its merits in his opinion. He rejected Wife's contention that it was Husband who caused her to abandon her claim against James' natural father:

[Wife] was at all times free to pursue the support action in West Virginia, and should have done so, especially in light of the fact that she knew where James' father was living and would have had no difficulty bringing such an action. Thomas should not be penalized for [Wife's] lack of diligence.

Opinion filed August 26, 1987. After review of the entire record we find no abuse of discretion in the trial court's ruling. The record discloses that Wife's actions were at least as instrumental in foreclosing the natural father's

obligations as were Husband's. Applying the *Miller* test to the facts of this case would not, therefore, yield an equitable estoppel situation.

It also bears notice that at the time of the hearing following Judge Wettick's ruling, Wife's recourse against the natural father was not precluded. The West Virginia Master had not yet made a determination on Wife's claim for support against him. The determination was therefore not before the Hearing Officer. Nor did notice of the determination reach Judge Kaplan until April 27, the date of his order denying the exceptions. He considered the determination in his opinion, stating that while the court does not agree with the West Virginia Master's findings, the "court is not in a position to give to [Wife] what she should properly be pursuing through the West Virginia courts of appeal." Opinion of August 26, 1987. We agree with the trial court. What was presented to Judge Kaplan was a Master's determination. Wife had yet to exhaust her remedies in the West Virginia court system. The trial court did not abuse its discretion in rejecting Wife's equitable estoppel argument.

Next Wife claims that the trial court relied improperly on *Commonwealth ex rel. McNutt v. McNutt*. She argues that *McNutt* creates new law in the Commonwealth by formulating an absolute rule that ex-stepparents have no support obligation. As new law, she asserts, the holding should not be applied retroactively to the case at bar. Again we disagree with Wife's argument. First, *McNutt* creates no such absolute rule. It states the general rule that a stepparent's support obligation should terminate upon dissolution of marriage. The *McNutt* court found no basis to depart from the rule on the facts before it. We do not read *McNutt* to have created a new rule the retroactive application of which would be inappropriate. The trial court in the case before us followed a similar course. The court considered the equitable estoppel exception and found that it did not apply to the facts in this case and thus did not carve out an exception to the general rule. After discussion

220

of the public policy arguments encouraging voluntary support of stepchildren advanced in *McNutt*, the trial court concluded:

> As there was no previous law, statutory or otherwise, that obligated a divorced spouse to continue supporting a child of his former spouse's previous marriage, this court will not create such a law, especially in light of the arguments made by the *McNutt* court.

Opinion, 8/26/87 at 8. The trial court did not abuse its discretion in thus applying the established law of the Commonwealth.

■ Wife's third argument is that prior determinations in the course of the divorce proceedings finding Husband *in loco parentis* establish a law of the case that cannot be reversed. In disposing of all the post-divorce decree issues, Judge Wettick ruled that the issue of whether Husband would be permanently obligated to support James after divorce was as yet unresolved. The prior rulings ordering support were interim support orders that did not address the post-divorce situation. Opinion of September 15, 1986 at 4–5. We find no abuse of discretion in the trial court's acceptance of Judge Wettick's conclusion and explication of his analysis that the interim orders do not establish a law of the case.

Finally, Wife asserts that the lower court abused its discretion in accepting the Hearing Officer's recommendations for amount of support and medical expenses. As with the decision of whether or not support is required, the matter of the amount of a support order is within the trial court's discretion, and a reviewing court will not disturb the lower court's order absent a clear abuse of discretion. *Costello v. LeNoir*, 462 Pa. 36, 337 A.2d 866 (1975); *Hartley v. Hartley*, 364 Pa.Super. 430, 528 A.2d 233 (1987). We find no abuse of discretion in Judge Kaplan's carefully explained adoption of the Hearing Officer's recommendations.

Finding that Wife's challenges to the lower court's determinations fail, we affirm the denial of Wife's exceptions.

Order affirmed.