646 A.2d 1251

Nancy L. GARMAN, Appellee,

v.

Richard G. GARMAN, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 10, 1994.

Filed Aug. 23, 1994.

Petition for Allowance of Appeal Denied Dec. 7, 1994.

Richard G. Garman, appellant, pro se.

J. Palmer Lockard, Harrisburg, for appellee.

Before McEWEN, DEL SOLE and MONTGOMERY, JJ.

DEL SOLE, Judge:

Richard G. Garman and Nancy L. Garman were married in 1987. At the time of the marriage, Appellee had an eight year old son, Christopher. Both parties acknowledge Appellant is not the biological or adoptive father of Christopher. A daughter was born to the parties marriage later in 1987.

In an attempt to facilitate familial harmony, Appellee and Appellant decided to change Christopher's surname to Garman. To effectuate this name change, Appellant signed a affidavit in 1990 stating he was Christopher's natural father. Although executing the name change affidavit, Appellant never formally adopted Christopher.

The parties separated in 1991, and Appellee filed a complaint against Appellant seeking child support for Christopher and their daughter. Both parties attended the initial support conference unrepresented by counsel. There Appellant signed an Acknowledgement of Paternity form stating he was Christopher's father. Appellant now vigorously asserts he was not properly informed of the form's significance. A support order was issued and became final when Appellant, under advise of counsel, chose not to file exceptions.

Appellant petitioned to decrease the Order in May of 1992, averring for the first time that Christopher was not his son and, also, that Appellee's income had substantially increased. At the support conference, Appellee readily admitted Appellant was not Christopher's father. Nonetheless, the hearing officer recommended Appellant's request for modification be denied based wholly on the fact paternity had been acknowledged at the first conference. An order denying Appellant's modification was issued on July 10, 1992. The following day, July 11, 1992, Appellee voluntarily requested Christopher be removed from the Support Order. Accordingly, an order was issued releasing Appellant from his court-ordered obligation to support Christopher.

Appellant then filed a Motion to Vacate Acknowledgment of Paternity. However, following a November 10, 1992 hearing, Appellant's motion was dismissed by the Court of Common Pleas of Dauphin County as moot based on the fact Christopher was no longer included in the support order.

Inexplicably, Appellee filed a Petition requesting Christopher be returned to the Support Order on November 17, 1992. Subsequently, a conference was held resulting in a recommendation that Christopher be added to the support order. An

order reestablishing Appellant's duty to support Christopher was issued and Appellant sought a de novo hearing before the Court of Common Pleas. The Court concluded that the prior acknowledgement of paternity at the time of the initial support conference and order, which was not appealed, precluded the current challenge to paternity. By doing so, the court denied Appellant's request for relief from paying child support for his former stepson.

On appeal, Appellant contends he should not be obligated to pay child support for his former stepson following separation from his wife when all parties involved in the proceedings fully acknowledge that Appellant is neither the natural nor adoptive father of the child.

■ It is well settled that no legal duty rests upon the stepparent to support a stepchild after the termination of the marriage. *McNutt v. McNutt*, 344 Pa.Super. 321, 323, 496 A.2d 816, 817 (1985); *Klein v. Sarubin*, 324 Pa.Super. 363, 367, 471 A.2d 881, 883 (1984). Rather, an absolute and affirmative duty rests with the natural parent to properly provide the requisite support. *DeNomme v. DeNomme*, 375 Pa.Super. 212, 216, 544 A.2d 63, 65 (1988) (quoting *Conway v. Dana*, 456 Pa. 536, 538, 318 A.2d 324, 325 (1974)). However, Appellee asserts that these principles of law do not apply because the entrance of a final support order established the paternity of Appellant and this became res judicata when he failed to timely appeal. Appellee concludes that Appellant may no longer raise any of the defenses which should have been addressed at the first support conference.

We disagree. The initial unchallenged support order is not, nor should it be, wholly dispositive of the issue of Appellant's paternity when considered in connection with the convoluted factual and procedural circumstances unique to this case. Specifically, two facts diminish the significance of that support order. First, the parties agree Appellant is neither the adoptive nor biological father. The record amply supports this agreement. Christopher was eight years old when Appellant and Appellee married. Appellant would have been fifteen

years old at the time of Christopher's birth. Further, the record demonstrates that at no point in time did Appellant ever formally adopt the stepson. Second, Appellee voluntarily requested termination of the initial support order following its issuance. The termination of the child support order at Appellee's request resulted in the Court of Common Pleas of Dauphin County concluding that Appellant's Motion to Vacate Acknowledgement of Paternity was moot because Christopher was no longer included in the support order.

■ Generally, if paternity is initially determined, this court has consistently disallowed subsequent attacks on that determination. *Wachter v. Ascero,* 379 Pa.Super. 618, 550 A.2d 1019 (1988). However, that general statement of the law is not without exception. Where overriding equities favor the putative father, the courts may overturn an assumed duty of support. *See, Commonwealth ex. rel. Gonzalez v. Andreas,* 245 Pa.Super. 307, 369 A.2d 416 (1976).

We have held that where the failure to challenge paternity was precipitated by fraud, a putative father will be permitted to question his status under certain circumstances. *B.O. v. C.O.,* 404 Pa.Super. 127, 590 A.2d 313 (1991). In *B.O. v. C.O.,* the fraud was the representation by mother that C.O. was the father of a child born to this unmarried couple. Based on that representation, C.O. acknowledged paternity. More than 30 days later, he sought a termination of support and genetic testing. The testing was done voluntarily and excluded him as the father. The trial court set aside the order and mother appealed claiming that the issue had been decided. We affirmed the trial judge, concluding that the initial representation by mother of C.O.'s paternity would satisfy a finding of fraud, and that the equitable considerations overwhelmingly favored C.O. We went on to state the prohibition against overturning a paternity determination was based on the desire not to interfere with an established family relationship, but where there is no such sense of a parental relationship, courts should not be bound by a fiction.

This court recently reached a similar result in *Jefferson v. Perry*, 432 Pa.Super. 651, 639 A.2d 830 (1994). There we reversed a trial court's finding of paternity based on a parent child relationship, where the genetic testing excluded the man as the father. We rejected the argument that the appellant's delay in challenging paternity was determinative of the matter. We held that the doctrine of equitable estoppel, which serves to prevent a putative father from challenging paternity, is premised on the level of the relationship between that father and child.

■ In this case, we are of the same view. The record clearly establishes that there is no father child relationship between Appellant and Christopher. Appellee, Christopher's own biological mother, consistently admitted throughout the course of the proceedings Appellant was not Christopher's natural or adoptive father. Ironically, Appellee also successfully petitioned the court to terminate Appellant's obligation to pay child support to Christopher. In so doing, Appellee formally acknowledged the erroneous paternity determination at the support conference.

We also believe that our decision today will serve the needs of our society. Today, step-parents perform a vital role. As appropriately noted in the Court of Common Pleas' decision, Appellant's act of serving in loco parentis for Christopher during the marriage to Christopher's mother should be applauded rather than punished. This court desires to encourage the generous actions of step-parents. *Com. ex. rel. McNutt v. McNutt*, 344 Pa.Super. 321, 322–24, 496 A.2d 816, 817 (1985). We might encourage the opposite effect by using a technical approach to support law and holding a step-parent responsible following separation for support of a child who was not adopted by that step-parent.

Therefore, we vacate the order of the trial court directing Appellant provide support for Christopher. Case remanded for vacation of the support order, jurisdiction relinquished.

McEWEN, J., concurs in the result.

MONTGOMERY, J., files a dissenting statement.

MONTGOMERY, Judge, dissenting.

I must respectfully dissent. It has long been the law that the failure to appeal a support order conclusively establishes paternity under the doctrine of *res judicata. Everett v. Anglemeyer*, 425 Pa.Super. 587, 625 A.2d 1252 (1993); *Sanders v. Sanders*, 384 Pa.Super. 311, 558 A.2d 556 (1989), allowance of *appeal denied* 525 Pa. 635, 578 A.2d 930 (1990); *Manze v. Manze*, 362 Pa.Super. 153, 523 A.2d 821 (1987); *Commonwealth ex rel. Palchinski v. Palchinski*, 253 Pa.Super. 171, 384 A.2d 1285 (1978); *Commonwealth v. Nedzwecky*, 203 Pa.Super. 179, 199 A.2d 490 (1964). Appellant never filed an appeal from the original support order which was entered on December 19, 1991, so the doctrine of *res judicata* precludes him from attempting, at this late date, to challenge paternity. Furthermore, an acknowledgement of paternity estops any subsequent attempt to deny paternity. *Manze v. Manze, supra.* Appellant signed an acknowledgement which specifically advised appellant that he was waiving his right to a trial on the issue of paternity and his right to representation by counsel. In addition, in the instant case, appellant had his name added to Christopher's birth certificate by swearing under oath that he was Christopher's biological father. I recognize the legal principle that where the failure to challenge paternity was precipitated by fraud, a putative father may be permitted to challenge paternity at a later date. *B.O. v. C.O.*, 404 Pa.Super. 127, 590 A.2d 313 (1991). I cannot find, on this record, however that appellant's failure to challenge paternity after the entry of the first support order, his acknowledgement of paternity, or his sworn statement of paternity in order to add his name to Christopher's birth certificate were precipitated by fraud.

The elements of fraud are a misrepresentation, a fraudulent utterance thereof, an intention that appellant would thereby be induced to act, justifiable reliance by appellant on the misrepresentation, and damage to appellant as a result. *Id.*

There was no misrepresentation that appellant was the biological father of Christopher, nor was there any other fraudulent utterance which was made to induce appellant to act or rely thereon. *Id.* Rather, appellant freely admits that he took the actions he did in order to keep peace in the family.

Although I agree fully with the majority that this court should encourage rather than punish step-parents when they take an active role, either emotionally or financially, in a step-child's life, I believe that appellant has gone far beyond this stage by twice acknowledging that he is Christopher's biological father. Moreover, although I sympathize with appellant's argument that he should not be required to support a child who is clearly not his biological child, I cannot help but point out that appellant, by his own actions, has brought about this result. Appellant cannot expect this, or any other court, to relieve him from taking responsibility for his own acts.

I would therefore affirm the trial court's order.