*58
 
 SAYLOR, Judge:
 

 This is an appeal from the trial court’s order of November 16, 1993, directing Appellant, Leon R. Drawbaugh, to pay child support for his stepchildren, Joshua and Lynne Moore.
 

 Leon Drawbaugh (Stepfather) and Margaret E. Drawbaugh (Mother) began residing together in 1982, and were married on December 6, 1986. Mother has two children from a previous marriage, Joshua Moore, born December 16, 1980, and Lynne Moore, born' January 21, 1982. Stepfather is the only father that the two children have known since 1983. Joshua has not seen his natural father since he was eight months old, and Lynne has apparently never seen her natural father. While the parties were married, Stepfather and Mother pooled their resources to provide food, clothing, shelter, and medical care for the children. Stepfather was also involved in the rearing of the children who referred to him as “dad.”
 

 Mother has attempted to obtain support from the natural father, but her efforts at locating him and pursuing support have been unsuccessful. Adams County has continued to maintain an arrearage claim against the natural father for a number of years, but according to Mother, a charging order has not been in existence for some time. Stepfather encouraged Mother to pursue the child support action against the natural father and accompanied Mother to the domestic relations office in an effort to get the support order enforced. Although the diligence with which Mother pursued this support claim apparently diminished over time, Stepfather never told Mother to abandon efforts to enforce the support order against the natural father.
 

 Mother filed for a divorce in November 1992 and moved out of the house with her two children in December 1992. Stepfather claims that Mother voluntarily departed from the marital residence, and that he was unaware of any conduct on his part which justified her withdrawal from the residence. The trial court agreed and denied Mother’s claim for spousal support.
 

 Stepfather filed a petition for minimal visitation with the two children on May 3, 1993, since Mother stopped any and all
 
 *59
 
 contact between Stepfather and the children claiming that Stepfather had no legal rights to visitation. After the trial court entered an order granting Stepfather visitation with the children, Mother filed a claim for child support against Stepfather. On November 16, 1993, the trial court held a hearing after which it concluded that Stepfather had assumed the status of
 
 in loco parentis
 
 in regard to the two children and was thus responsible for their support. Accordingly, the court entered an order directing Stepfather to pay child support for Joshua and Lynne Moore at the rate of $89.00 per week plus $5.00 per week on account of arrears. It is from this determination that Stepfather appeals.
 

 Our standard of review in considering a trial court’s decision in a child support action is clear:
 

 A child support order will not be disturbed unless the trial court committed an abuse of discretion. An abuse of discretion is more than an error of judgment. It must be a misapplication of the law or an unreasonable exercise of judgment.
 

 DeNomme v.
 
 DeNomme, 375 Pa.Super. 212, 218, 544 A.2d 63, 66 (1988), citing
 
 Scheidemantle v. Senka,
 
 371 Pa.Super. 500, 538 A.2d 552 (1988).
 

 Stepfather presents but one issue on appeal: Whether a stepfather has a legal obligation to support stepchildren even though the natural father’s rights have not been terminated by the court and the stepfather has never encouraged the natural mother not to collect child support from the natural father or prevented her from doing so.
 

 We must therefore examine the circumstances, if any, under which a stepfather may be held liable to support the children of his wife’s prior marriage. We begin with the general rule that a stepparent has no legal obligation to support his or her stepchild.
 
 DeNomme v. DeNomme,
 
 375 Pa.Super. 212, 544 A.2d 63 (1988);
 
 Klein v. Sarubin,
 
 324 Pa.Super. 363, 471 A.2d 881 (1984);
 
 Commonwealth ex. rel. Hagerty v. Eyster,
 
 286 Pa.Super. 562, 429 A.2d 665 (1981). However, it is Appellee’s theory, with which the trial court
 
 *60
 
 agreed, that Stepfather stands
 
 in loco parentis
 
 to wife’s children and, as a consequence, has a duty to support them.
 

 It is true that a stepfather who lives with his wife and her natural children may assume the relationship of
 
 in loco parentis. Spells v. Spells,
 
 250 Pa.Super. 168, 378 A.2d 879 (1977). Such status “embodies two ideas: first, the assumption of parental status, and second, the discharge of parental duties” and the “[ejxistence of such a relationship is largely dependent upon the intention of the person assuming the parental status.”
 
 Klein v. Sarubin,
 
 324 Pa.Super. at 367-368, 471 A.2d at 883. Whether or not such status exists is a “question of fact to be determined by an evaluation of all of the circumstances, rather than a matter of strict legal definition.”
 
 D’Auria v. Liposky,
 
 197 Pa.Super. 271, 279, 177 A.2d 133, 136 (1962).
 

 In
 
 Klein v. Sarubin,
 
 324 Pa.Super. 363, 471 A.2d 881 (1984), the Superior Court held that the trial court did not error in refusing to allow the natural father to fully develop his theory in a support proceeding that a second husband has assumed the status of
 
 in loco parentis
 
 and was thus obligated to support his stepchildren. The court did state that “in particular instances, a support obligation has been imposed as a consequence [of assuming
 
 in loco parentis
 
 status],” and cited
 
 Commonwealth ex. rel. Bulson v. Bulson,
 
 278 Pa.Super. 6, 419 A.2d 1327 (1980) and
 
 Commonwealth v. Cameron,
 
 197 Pa.Super. 403, 179 A.2d 270 (1962) for this proposition.
 
 Klein v. Sarubin,
 
 324 Pa.Super. at 368, 471 A.2d at 883.
 
 Bulson,
 
 however, was a spousal support case and not a child support case; although there is dicta in
 
 Bulson
 
 to support wife’s position,
 
 Bulson
 
 held only that it was not an abuse of discretion for the trial court, in calculating a spousal support award against husband, to take into account the cost to the wife of supporting her child from a prior marriage since husband knew when he married her that she had this responsibility. And in
 
 Cameron,
 
 the stepfather had joined with the mother in executing a written release in favor of the natural father releasing him from all liability for child support and contractually undertaking to support the child of the wife’s former
 
 *61
 
 marriage.
 
 See, also, Roberts v. Furst,
 
 385 Pa.Super. 530, 561 A.2d 802 (1989) (a written agreement between mother, her second husband, and the natural father to release the natural father from his child support obligation was enforceable).
 

 In
 
 Commonwealth ex. rel. McNutt v. McNutt,
 
 344 Pa.Super. 321, 496 A.2d 816 (1985), appellant was ordered to pay support for the natural daughter of his former wife. At the time of the parties’ marriage, the child was two months old and the whereabouts of the natural father were unknown. The appellant never adopted his wife’s daughter. During their marriage, the parties had a child of their own and after their divorce, the appellant continued to visit with both children. The trial court found that the appellant had acted
 
 in loco parentis
 
 toward his former stepdaughter and was therefore liable for her support. In reversing the support order, the Superior Court held as follows:
 

 The trial court found that the Appellant acted
 
 in loco parentis
 
 both before and after the dissolution of the marriage and this is a finding of fact we will not disturb. We do not agree however that the Appellant’s past and continued love and devotion to his former stepchild carry with it the duty to financially support [the stepchild]. This would be carrying the common law concept of
 
 in loco parentis
 
 further than we are willing to go. There is authority in other jurisdictions for the proposition that a stepparent who stands
 
 in loco parentis
 
 may be held liable for the support of a child during the marriage, (citations omitted). However, this obligation does not survive the dissolution of the marriage of the child’s natural parent and stepparent. The general rule is that no legal duty rests upon the stepparent to support after the termination of the marriage, (citations omitted).
 

 If we were to hold that a stepparent acting
 
 in loco parentis
 
 would be held liable for support even after the dissolution of the marriage then all persons who gratuitously assume parental duties for a time could be held legally responsible for a child’s support.... These acts of generosity should not be discouraged by creating a law which
 
 *62
 
 would require anyone who begins such a relationship to continue financial support until the child is eighteen years old. (emphasis added)
 

 ... [w]e cannot extend the law so far as to hold a former stepparent financially responsible for a child whom he loves and cares for but has not adopted.
 

 Finally, in
 
 DeNomme v. DeNomme,
 
 375 Pa.Super. 212, 544 A.2d 63 (1988), the Superior Court reiterated the general rule that a stepparent has no legal obligation to support stepchildren. It noted that an exception has been found where the stepparent assumes
 
 in loco parentis
 
 status, citing
 
 Spells v. Spells,
 
 250 Pa.Super. 168, 378 A.2d 879 (1977).
 
 Spells,
 
 however, did not involve child support and held only that a stepfather, found to be
 
 in loco parentis
 
 with his stepchildren, should be permitted to visit with his stepchildren after the stepfather and the childrens’ mother had separated. The Court in
 
 DeNomme
 
 also noted that the New Jersey Supreme Court has created an equitable estoppel exception to this general rule where the stepparent’s actions have caused the spouse to-abandon her support claim against the natural parent, resulting in such claim being barred by law,
 
 Miller v. Miller,
 
 97 N.J. 154, 478 A.2d 351 (1984), but found no estoppel established on the record.
 
 [1]
 
 In any event, our Supreme Court has not adopted this equitable estoppel exception as the law in this Commonwealth.
 

 Thus it appears that no appellate case in Pennsylvania has imposed a duty of support on a stepparent, even one who
 
 *63
 
 stands
 
 in loco parentis
 
 to his stepchildren, following the dissolution of the parties’ marriage, absent a written agreement to assume such obligation. Instantly, although the parties’ divorce was not final at the time the trial court entered the support order, Wife had filed for a divorce, left the marital home, and was living with her boyfriend; the marriage was therefore for all intents and purposes over.
 

 Here, as in
 
 McNutt,
 
 Stepfather should not be penalized for having provided both financial and emotional support to his stepchildren for the past ten years. Although Stepfather sought visitation rights, to which he is entitled on this record,
 
 Spells v. Spells, supra.,
 
 and clearly loves and cares about his stepchildren, it was an abuse of discretion to hold him legally responsible for their support.
 

 Accordingly, the order of the trial court directing Stepfather to pay support for his two stepchildren is reversed.
 

 [1]
 

 . In its Rule 1925 statement, the trial court stated that "[t]he Plaintiff has, in recent years, abandoned efforts to pursue the natural father based upon her reliance upon the Defendant assuming an increasing role in the support and discharge of parental duties and responsibilities towards her children." However, Wife was at all times free to pursue a support action against the natural father, and the eventual unavailability of the natural father was not due in any way to the actions of Stepfather. In fact, the trial court found that the Stepfather “has apparently encouraged [Wife] at times to pursue the child support action against the natural father and taken her to the domestic relations office for that purpose, however, without any success.” (Trial Court Opinion of 11/16/93, p. 4).