672 A.2d 1347

Donna L. FRANKENFIELD, Appellee,

v.

Jeffrey C. FEESER, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 6, 1995.

Filed March 13, 1996.

48

Edward L. Crow, York, for appellant.

Shawn P. McLaughlin, York, for appellee.

Before DEL SOLE, SAYLOR and HESTER, JJ.

SAYLOR, Judge:

Where Mother retains primary custody of the child of her first marriage and desires to remain at home to care for the child of her second marriage, does the trial court abuse its discretion by applying the nurturing parent doctrine to preclude the attribution of an earning capacity to Mother? Father, who sought a reduction in his child support obligation, contends that such a ruling does constitute an abuse of discretion. On the facts of this case, we disagree. Accordingly, we affirm the order entered by the Court of Common Pleas of York County on January 11, 1995.

The parties to this appeal, Appellant, Jeffrey C. Feeser ("Father"), and Appellee, Donna L. Frankenfield ("Mother"), are the parents of one child, Kiersten, born March 5, 1988. Father and Mother separated in February of 1992 and eventually divorced, with Mother assuming custody of Kiersten. Mother has remarried, and she and her husband have a child, McKayla, born October 5, 1994. Kiersten remains with Mother and her husband.

Pursuant to an order of court entered November 5, 1992, Father was obligated to pay $70.00 per week toward Kiersten's support. On August 15, 1994, Father petitioned for a

downward modification of his child support obligation. A hearing officer determined that Father's net monthly income was $1,480.30 and that Mother's monthly earning capacity was $1,371.33. On the basis of those figures, an order was entered which reduced Father's support obligation to $56.00 per week. Mother requested a hearing by the trial court, asserting, *inter alia*, that because she was staying home with her newborn child, the nurturing parent doctrine should be applied to preclude the assignment of an earning capacity to her.

Following a hearing, the trial court agreed, noting that "it would appear from the record before us that the parties ... gave some priority to one of the parents remaining at home with Kiersten, and we will afford [Mother] that opportunity once again with her new child."[1] Accordingly, the trial court entered an order on January 11, 1995, establishing Father's support obligation at $76.00 per week.[2]

According to Father, the trial court misapplied the law in applying the nurturing parent doctrine to the facts of the present case. Father contends that the trial court ignored pertinent factors, most importantly Mother's employment history. At the same time, Father asserts, the trial court "placed entirely too much emphasis" on two factors: 1) the fact that Mother remained at home with Kiersten during the parties' marriage; and 2) Mother's desire to stay at home with the child of her second marriage. Father asks, in effect, that we vacate the order of January 11, 1995 and reinstate the order that was based on the hearing officer's findings.

In reviewing a child support order, our standard of review is narrow: we will not interfere with the trial court's

1. Although the trial court has not filed an opinion, the reasons for the court's decision were stated on the record at the conclusion of the hearing and have been restated in the order of January 11, 1995. In this regard, we note that the record includes an order directing Father to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Apparently Father failed to comply with the order, as the record does not contain a Rule 1925(b) statement.

2. The increase from the amount set in 1992 apparently resulted from the assignment to Father of additional monthly earnings from a part-time business. Father has not challenged that aspect of the trial court's order.

order absent a clear abuse of discretion, shown by clear and convincing evidence. *Hesidenz v. Carbin,* 354 Pa.Super. 610, 512 A.2d 707 (1986). "An abuse of discretion is more than an error of judgment. It must be a misapplication of the law or an unreasonable exercise of judgment." *Drawbaugh v. Drawbaugh,* 436 Pa.Super. 57, 59, 647 A.2d 240, 241 (1994), quoting *DeNomme v. DeNomme,* 375 Pa.Super. 212, 218, 544 A.2d 63, 66 (1988).

 It is settled law that both parents are equally responsible for the support of their children. *Kelly v. Kelly,* 430 Pa.Super. 31, 633 A.2d 218 (1993). The determination of a parent's ability to provide support is based upon the parent's earning capacity rather than upon his or her actual earnings. *Id.; Hesidenz, supra.* However, an exception to this general rule exists in the form of the "nurturing parent doctrine." First recognized in *Commonwealth ex rel. Wasiolek v. Wasiolek,* 251 Pa.Super. 108, 380 A.2d 400 (1977), the nurturing parent doctrine holds that

> earning capacity cannot always be imputed to a parent who chooses to stay home with a minor child. In appropriate cases, such a nurturing parent may be excused from contributing support payments. A trial court, so holding, must consider the age and maturity of the child, the availability of others who might assist the parent, the adequacy of available financial resources if the parent remains at home, and finally, the parent's desire to stay home and nurture the minor child.

*Hesidenz,* 354 Pa.Super. at 616, 512 A.2d at 710.

 In the present case, Father concedes that the nurturing parent doctrine is not inapplicable simply because the child to be nurtured is the child of Mother's second marriage. He contends, however, that in deciding whether to apply the doctrine, the trial court failed to give sufficient weight to Mother's employment history. Father's claim, as we understand it, is that where, as here, the child to be nurtured is not the child of the parties and there are no unusual circumstances, such as illness, "the nurturing parent doctrine should

not be applied [if] the nurturing parent has a significant work history."

A similar issue was presented to the Superior Court in *Bender v. Bender*, 297 Pa.Super. 461, 444 A.2d 124 (1982). The parties were the parents of one child, of whom the father had custody. The mother had had a second child, not by the same father, and sought an indefinite suspension of her support obligation so that she could remain at home to care for the second child. In the belief that application of the nurturing parent doctrine was required under *Wasiolek*, the trial court granted the mother's request. The father appealed.

The Superior Court held that *Wasiolek* did not "establish an absolute rule that an earning capacity can not be imputed to a parent who chooses to stay home with a minor child." *Id.*, 297 Pa.Super. at 465, 444 A.2d at 126. At the same time, the court declined to adopt the "restrictive interpretation of *Wasiolek* [urged by the father, who asks] us not to apply the 'nurturing parent doctrine' where the child to be 'nurtured' is not the subject of the support order." *Id.* Instead of establishing an absolute rule that the doctrine did or did not apply in such a situation, the court remanded the case for an evidentiary hearing, observing that

> [i]n addition to [the] factors which are specifically enunciated in *Wasiolek*, the court on remand may wish to consider the fact that the child to be "nurtured" is not the subject of the support order, although we do not feel that this fact necessarily removes this case from the application of the "nurturing parent doctrine."

*Id.*, 297 Pa.Super. at 467, 444 A.2d at 126. Although the issue of the mother's employment history was not specifically addressed by the Superior Court, the summary of the case indicates that she did in fact have such a history.[3]

In *Klein v. Sarubin*, 324 Pa.Super. 363, 471 A.2d 881 (1984), the father, seeking a decrease in his support obligation, argued on appeal that the trial court had erred in refusing to

---

**3.** "[The mother] made a decision at some point not to return to work after [the second child's] birth." *Id.*, 297 Pa.Super. at 464, 444 A.2d at 125.

continue the support hearing until a copy of the most recent income tax return of the mother and her second husband could be obtained. The Superior Court reasoned that the tax return was unnecessary because the mother's second husband was not required to contribute to the support of the children of her first marriage and because the mother, who was "presently unemployed, and at home caring for the child of her present marriage," *id.*, 324 Pa.Super. at 367, 471 A.2d at 883, could contribute nothing to the children's support. The latter fact, the court observed, "was established to the satisfaction of both [the father] and the court. . . ." *Id.*, 324 Pa.Super. at 371, 471 A.2d at 885. The fact that the child being nurtured was the child of the mother's second marriage was apparently not made an issue by the father.

In *Butler v. Butler*, 339 Pa.Super. 312, 488 A.2d 1141 (1985), the father argued that the trial court had considered the mother's actual earnings instead of her earning capacity, with the result being the imposition of an excessive support obligation upon him. The mother was receiving public assistance and remaining at home with her three minor children, one from the parties' marriage and two from her previous marriage. After analyzing the case under *Wasiolek*, and noting specifically that there were "adequate financial resources available to support the parties' child without [the mother's] providing employment income for child support[,]" *id.*, 339 Pa.Super. at 319, 488 A.2d at 1144, the Superior Court concluded that the trial court had not erred in considering the mother's actual earnings rather than her earning capacity.

In *Hesidenz, supra*, the mother's support obligation was at issue in the consolidated appeals of both parties. Ten years after the parties' divorce, custody of the parties' two children was transferred from the mother to the father. The mother, a registered nurse, decreased her work load from full-time to part-time after the birth of the first child of her second marriage. On the basis of her diminished wages, she obtained a reduction in her child support obligation, from which the father appealed. When the mother experienced poor health following the birth of another child, she ceased working alto-

gether. She then sought to be relieved of her support obligation, but the trial court agreed only to hold the obligation in abeyance until she was able to return to work. The mother appealed.[4]

On appeal, the father argued that there was insufficient evidence to support the trial court's findings that the mother was in poor health and that she was entitled to the benefit of the nurturing parent doctrine. The Superior Court found no merit to either claim. Although the father did not argue that the nurturing parent doctrine was inapplicable where it is the child of a second marriage who is being nurtured, the court noted that "we have held that the fact that the child to be nurtured is not the subject of the support order does not necessarily remove the case from the application of the 'nurturing parent' doctrine." *Id.,* 354 Pa.Super. at 616 n. 4, 512 A.2d at 710 n. 4, citing *Klein, supra,* and *Bender, supra.* With regard to the mother's appeal, the Superior Court held that the trial court had abused its discretion in suspending rather than terminating her support obligation.

In *Atkinson v. Atkinson,* 420 Pa.Super. 146, 616 A.2d 22 (1992), the trial court applied the nurturing parent doctrine to relieve the mother of any obligation to support the child of her first marriage. The father argued on appeal that the trial court had erred in not determining the mother's earning capacity and imposing upon her a support obligation based on her earning capacity. He maintained that "a mother should be required to pay support for a child of her first marriage who is living with his father even though she is a full-time caretaker for the child of her second marriage." *Id.,* 420 Pa.Super. at 148, 616 A.2d at 23.

As in *Bender,* the Superior Court did not take the restrictive approach urged by the father. Instead, the court offered the following analysis:

[The trial court] determined that the issue was not whether the mother was caring for her children as opposed to *their*

---

**4.** The procedural history of the case is complex. We have not discussed it in detail because it is not relevant to the issue before us.

children, but whether under the facts of the case what the earning capacity would be. This is the correct analysis under these facts, particularly since there is no evidence of the mother's earning capacity.... On this record, imputing earning capacity to the mother is a fiction which simply shifts the burden of supporting the wife's child of the first marriage to her second husband, who has no legal obligation to do so.

The concept of imposing a support Order based on earning potential ... derives from the principle that a person who has a support obligation may not withdraw from income[-] producing endeavors to defeat the right of support to his/her dependents. It has never been the law that a mother who elects to care for her young child is chargeable with voluntary withdrawal from income-producing activity to defeat the right to support her child by a previous marriage.

*Id.*, 420 Pa.Super. at 149, 616 A.2d at 23 (emphasis in original). Having thus analyzed the issue, the court noted the absence in the record of any evidence that the mother had ever worked or that her son, who had lived with her for most of his life, had not had "the benefit of her full-time nurturing." *Id.*, 420 Pa.Super. at 149, 616 A.2d at 23. The court concluded that without proof of the mother's income-producing capacity and of the prior practice with regard to caring for the older child, there was no basis upon which to overrule the trial court's judgment.

In *Kelly, supra,* the Superior Court considered whether the trial court had abused its discretion by attributing an earning capacity to the mother and, on that basis, requiring her to contribute to the support of the parties' child, who resided with the father. The mother wished to remain at home with the child of her second marriage. Relying on *Atkinson,* she argued that the nurturing parent doctrine precluded the trial court from assigning an earning capacity to her. The Superior Court distinguished *Atkinson* by noting that in that case, unlike in the case before it, the mother had never worked.

Accordingly, the Superior Court affirmed the order establishing the mother's support obligation.

Most recently, in *Depp v. Holland,* 431 Pa.Super. 209, 636 A.2d 204 (1994), the Superior Court considered whether the trial court had erred in not applying the nurturing parent doctrine to excuse the mother from contributing to the support of the parties' child. The father had custody of the child; the mother wished to remain at home to care for her second child, born to a different father. After noting that the mother not only had a past work history but had also worked at home, the Superior Court concluded that the particular facts of the case did not warrant the application of the nurturing parent doctrine.

■ As our review of the case law illustrates, there is no authority for the inflexible requirement proposed by Father, namely, that "since [Mother] has a significant work history, she should have an earning capacity." To the contrary, while "[a] trial court in determining [a parent's] ability to pay support must primarily focus on earning capacity rather than actual earnings, . . . a trial court is free to consider making an exception to this rule whenever a parent chooses to stay at home with a minor child[,]" *Singleton v. Waties,* 420 Pa.Super. 184, 190, 616 A.2d 644, 647 (1992) (citation omitted), so long as the relevant factors are considered, *Hesidenz, supra.*

In the present case, it is clear that the trial court considered Mother's work history, which it summarized in its findings, and weighed this factor in its decision as it was required to do, noting that "[w]e are also to consider past work history. . . ." It is also clear that under the relevant case law the trial court did not abuse its discretion in refusing to accord controlling weight to Mother's work history, and we thus find no merit to Father's claim.

■ Next, Father argues that the trial court placed too great an emphasis upon the fact that Mother had stayed home with Kiersten and wished to do likewise with the young child

of her second marriage.[5] It is undisputed that a parent's desire to stay home with his or her child is not dispositive of the issue. *Butler, supra; Bender, supra; Wasiolek, supra.* In fact, the trial court acknowledged as much in the present case. Nonetheless, the parent's desire is a factor to be considered, even where the child to be nurtured is not the child of both parties. *See Bender, supra.* Furthermore, we note that in *Atkinson, supra,* the Superior Court suggested that prior practice was a relevant consideration. Thus we conclude that the trial court did not give undue weight to these factors.

Finally, Father contends that the trial court erred in ignoring two additional factors: 1) the adequacy of financial resources if Mother remains at home, and 2) the availability of others who could assist Mother in caring for McKayla. However, Father does not argue that he is unable to support Kiersten in the amount ordered by the trial court. *See Bender, supra* ("[the father's] ability to support [the parties' child] is . . . a major factor to be considered in determining whether [the mother] should be permitted to remain at home with [the child of a subsequent relationship]"). Nor did Father offer any evidence regarding the availability of other caregivers. Thus we find no merit to these claims.

In sum, this case required the trial court to apply a general principle, the "nurturing parent doctrine," to a specific set of facts. Father has failed to demonstrate by clear and convincing evidence that the trial court misapplied the law or unreasonably exercised its judgment in doing so. Therefore, finding no abuse of discretion, we affirm the order of January 11, 1995.

Order affirmed.

DEL SOLE, J., files a concurring statement.

---

**5.** Father also argues that although he discouraged Mother from working while the parties were still married, he had mixed motives for doing so, namely, he wanted Mother at home to care for Kiersten and also wished to discourage her extra-marital affair with a co-worker. However, the fact remains that Mother was able to stay at home and care for Kiersten and was encouraged to do so by Father.

**DEL SOLE, Judge, concurring:**

While I believe the Majority has correctly stated and applied the law in this case, I remain of the view that the "nurturing parent doctrine" should only apply where the child being nurtured is the child for whom support is sought. See *Atkinson v. Atkinson,* 420 Pa.Super. 146, 616 A.2d 22 (1992) (Del Sole, J. dissenting).