ORIE MELVIN, J.
¶ 1 This appeal presents the unique question of whether Appellant, H.A.N., should be required to pay her former domestic partner Appellee, L.S.K. (Mother), child support for five children conceived through artificial insemination and born during their relationship. 'Despite being granted court-ordered legal and ■ partial custody, on appeal, H.A.N. claims she should not be required to pay child support since she is not a biological or adoptive parent. For the reasons that follow, we affirm.
¶ 2 The facts and procedural history may be summarized as follows. The parties are a lesbian couple who were involved in a relationship from the mid-1980’s until 1997. The parties agreed to have children together. Through a fertility facility located in Virginia, the parties arranged for Mother to conceive through artificial insemination. An anonymous sperm donor relinquished all parental rights to any child Mother might bear. After Mother became pregnant, the couple prepared for the birth of the child. On December 24, 1990, Mother gave birth to a son, S.J.K. During the delivery, H.A.N. was present. At the time of this child’s birth, H.A.N. was laid off from her job. As a result, she cared for the newborn during the day *875 while Mother resumed her civilian job in the United States Navy and supported the family. In 1992, the parties decided to have more children. They had previously agreed that H.A.N. would bear the second child. However, H.A.N. was unable to do so as a result of a medical condition. Therefore, Mother was again artificially inseminated at the same Virginia facility using an anonymous sperm donor. This time, Mother became pregnant with quadruplets. Prior to the birth, Mother was incapacitated and H.A.N. took care of all of her needs. On March 19, 1993, Mother gave birth to S.J.K., L.J.K., W.L.K. and F.L.K., a set of quadruplets. H.A.N. stayed at home and cared for the children while Mother returned to work and completed a college degree.[1] In the fall of 1997, while living in Carlisle, Cumberland County, the parties separated. Thereafter, Mother was transferred to San Diego, California. She moved with the children to California where she currently works as a civilian employee with the Department of Defense. H.A.N. still resides in Cumberland County. She is currently employed as a light machine operator with Lear Corporations.[2]
¶ 3 In February 1998, H.A.N. filed a complaint for custody of the children. On May 22, 1998, Mother filed a complaint against H.A.N. seeking child support for the five children. On June 16, 1998, H.A.N. filed preliminary objections in the nature of a demurrer to the support complaint. H.A.N. alleged that Mother had no legal cause of action against her for child support in the absence of an order granting her legal custody or in loco parentis status. The preliminary objections were later withdrawn and refiled on September 18, 2000. In the interim, the trial court entered an order granting each party legal custody of the children. The order also granted H.A.N. partial physical custody of the children in Carlisle during summers and school breaks. The order further provided for the parties to share the costs of transportation. Hearings were held on H.A.N.’s preliminary objections to the support complaint on November 21 and 27, 2000. On December 15, 2000, the trial court dismissed H.AN.’s preliminary objections. The trial court found that H.A.N.’s conduct estopped her from claiming that she was not liable for support. The matter was then referred to the domestic relations officer for the entry of an appropriate child support order.[3] On July 25, 2001, a support conference was held before a hearing officer. A de novo hearing was later held before a master on November 7, 2001. On November 13, 2001, the trial court entered an interim order based upon the master’s report and recommendation. Both parties filed exceptions, and the master filed a supplemental report and recommendation on February 11, 2002. On February 12, 2002, the trial court entered a final order effective May 22, 1998, directing H.A.N. to pay *876 child support to Mother for the five children as follows:
(i) From May 22, 1998 through December 31, 1998, in the amount of $546.00 per month;
(ii) From January 1, 1999 through December 31, 1999, in the amount of $571.00 per month.
(iii) From January 1, 2000 through December 31, 2000, in the amount of $869.00 per month;
(iv) From January 1, 2001 in the amount of $892.00 per month.
Order, 2/12/02.
¶ 4 The trial court also directed H.A.N. to pay 21% of unreimbursed medical expenses for the children that exceed $250.00 annually per child during the years 1998 and 1999; 29% of such expenses during the year 2000; and 30% of such expenses from January 1, 2001. The Order further provided H.A.N. to pay $200.00 per month on accrued arrearages effective February 12, 2001. This appeal followed.
¶ 5 Appellant H.A.N. presents two questions for our review:
1. DOES A WOMAN OWE A DUTY OF SUPPORT- TO THE CHILDREN OF HER FORMER LESBIAN PARTNER [?][4]
2. IF THE COURT FINDS AN EQUITABLE, IF NOT LEGAL, DUTY TO SUPPORT, IS THE AMOUNT OF SUPPORT DETERMINED' BY THE CHILD SUPPORT GUIDELINES, PA.R.C.P. 1910 ET. SEQ.?
Appellant’s brief at 4.
¶ 6 Our standard and scope of review in child support cases is narrow. Gephart v. Gephart, 764 A.2d 613, 614 (Pa.Super.2000). We will not disturb a child support order absent an abuse of discretion. Fitzgerald v. Kempf 805 A.2d 529, 531 (Pa.Super.2002); Middleton v. Robinson, 728 A.2d 368, 371 (Pa.Super.1999). “An abuse of discretion occurs if insufficient evidence exists to sustain a support award, if the trial court overrides or misapplies existing law, or if the judgment exercised by the trial court is manifestly unreasonable.” Colonna v. Colonna, 788 A.2d 430, 438-439 (Pa.Super.2001) (en banc); appeal granted, 569 Pa. 678, 800 A.2d 930 (2002).
¶ 7 During the custody phase, the trial court determined that H.A.N. stood in loco parentis status to the five children. “The phrase in loco parentis refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption.” T.B. v. L.R.M., 567 Pa. 222, 228, 786 A.2d 913, 916 (2001). “The status of in loco parentis embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties.” Id. at 228-229, 786 A.2d at 916-917. The rights and liabilities arising out of that relation are the same as between parent and child. Spells v. Spells, 250 Pa.Super. 168, 378 A.2d 879, 882 (1977). H.A.N.’s in loco parentis status allowed her to have standing to petition for custody of the children. Trial Court Opinion, 12/15/00 at 4. See J.A.L. v. E.P.H., 453 Pa.Super. 78, 682 A.2d 1314 (1996) (holding where mother’s domestic partner' stood in loco parentis to child, partner had standing to seek partial custo *877 dy); see also McDonel v. Sohn, 762 A.2d 1101 (Pa.Super.2000), appeal denied, 566 Pa. 665, 782 A.2d 547 (2001); T.B. v. L.R.M., supra. The custody order awarding H.A.N. legal and partial physical custody permits her to be involved in any decision involving the children’s well-being and also allows them to stay at her home for extended periods of time throughout the year. Although H.A.N. has gained certain parental rights, she denies any obligation to provide the children financial support.
¶ 8 Liability for support is governed by 23 Pa.C.S.A. § 4321. Under this section, parents are liable for the support of their children who are unemancipated and 18 years of age or younger. 23 Pa. C.S.A. § 4321(2). It is well settled that both parents are equally responsible for support of their children. Frankenfield v. Feeser, 449 Pa.Super. 47, 672 A.2d 1347, 1349 (1996). The duty to support a minor child is absolute. Oeler by Gross v. Oeler, 527 Pa. 532, 537, 594 A.2d 649, 651 (1991). The purpose of awarding child support is to promote the best interests of the child. Id. Although the term “parent” is not defined in the Domestic Relations Code, there is no dispute that H.A.N. is not the biological or adoptive parent of these five children.[5]
¶ 9 H.A.N. claims that her status is similar to that of a stepparent. Generally, a stepparent has no legal duty to support a stepchild following the dissolution of marriage. Garman v. Garman, 435 Pa.Super. 590, 646 A.2d 1251, 1252 (1994), appeal denied, 539 Pa. 668, 652 A.2d 838 (1994); Drawbaugh v. Drawbaugh, 436 Pa.Super. 57, 647 A.2d 240 (1994); Commonwealth ex. rel. McNutt v. McNutt, 344 Pa.Super. 321, 496 A.2d 816 (1985). However, when a stepparent has held a child out as his own, he may be estopped form denying paternity and therefore be liable to support the stepchild following a divorce under the doctrine of equitable estoppel. Hamilton v. Hamilton, 795 A.2d 403 (Pa.Super.2002). “Estoppel in paternity actions is merely the legal determination that because of a person’s conduct (e.g. holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage[.]” Fish v. Behers, 559 Pa. 523, 529, 741 A.2d 721, 723 (1999).
¶ 10 In the present case, the trial court found that H.A.N.’s conduct estopped her from claiming she owed no duty of support. The trial court found that estoppel applied even more strongly here than in a stepparent situation. Unlike a stepparent, it is evident that H.A.N. did not enter into a relationship where children already existed. Instead, she and Mother decided to start a family together.
¶ 11 “[E]quitable estoppel applies to prevent a party from assuming a position or asserting a right to another’s disadvantage inconsistent with a position previously taken.” Commonwealth ex rel Gonzalez v. Andreas, 245 Pa.Super. 307, 369 A.2d 416, 418 (1976). “[E]quitable estoppel, reduced to its essence, is a doctrine of fundamental fairness designed to preclude a party from depriving another of a reasonable expectation when the party inducing the expectation albeit gratuitously knew or should have known that the other would rely upon that conduct to his detriment.” Id. Here, H.A.N. committed herself to a course of conduct which involved *878 significant undertakings and commitment by Mother. Contrary to H.AN.’s contentions, we find that in the absence of any legislation that prevents such an undertaking, equitable considerations can be applied in weighing what is just and necessary to protect the rights, • interest, and welfare of the children involved. It is clear from the record that H.A.N. acted as a “co-parent” with Mother in all areas concerning the children’s conception, care and support. For example, Mother and H.A.N. agreed to have children together through artificial insemination. H.A.N. was Mother’s partner in childbirth classes and active in the delivery room. H.A.N. assisted in selecting the names for the children and had her family members serve as godparents. H.A.N. stayed at home and cared for the children while Mother resumed her career, pursued higher education and supported the family unit. H.A.N. was involved in the children’s day-to-day care and schooling, as well as their health needs for over eight years. Although the children were aware that Mother was their biological mother, they referred to H.A.N. as “Nanna.” Still, H.A.N. acted as a parent to these children just as much as Mother did. Moreover, by virtue of the custody agreement, her influence over the children remains.
¶ 12 We recognize this is a matter which is better addressed by the legislature rather than the courts. However, in the absence of legislative mandates, the courts must construct a fair, workable and responsible basis for the protection of children, aside from whatever rights the adults may have vis a vis each other.
¶ 13 Moreover, equity mandates that H.A.N. cannot maintain the status of in loco parentis to pursue an action as to the children, alleging she has acquired rights in relation to them, and at the same time deny any obligation for support merely because there was no agreement to do so. Although statutory law does not create a legal relationship, applying equitable principles we find that in order to protect the best interest of the children involved, both parties are to be responsible for the emotional and financial needs of the children.
¶14 H.A.N. next contends that where a duty of support is based upon equitable rather than legal grounds, the support guidelines are not applicable. We disagree. Actions for support are governed by Pa.R.C.P.1910.1, et seq. Rule 1910.1(a) sets forth the scope of the rules stating, “[ejxcept as provided by subdivision (b), the rules of this chapter govern all civil actions or proceedings brought in the court of common pleas to enforce a duty of support or an obligation to pay alimony pendente lite.” 42 Pa.C.S.A. § 1910.1(a). The Note following this subsection indicates that a duty of support is imposed by 28 Pa.C.S.A. § 4321, Liability for Support and 62 P.S. § 1973, Relatives liable for the support of indigent person; procedure to enforce support. Id. at Note. The amount of a child support award is determined in accordance with the Pennsylvania Support Guidelines. 42 Pa.C.S.A. § 1910-16-1, et seq.; 23 Pa.C.S.A. § 4322, Support guideline.
¶ 15 Relying on the Note to Rule 1910.1(a), H.A.N. claims that since she is not legally obligated to pay support under § 4321, the support guidelines should not apply. Instead, she asserts that a remand is in order for the trial court to take into account certain “equitable factors” in fashioning an order of support. She claims such factors include her “impaired stature in the law as a former lesbian partner, her liability in custody by virtue of not being a natural parent despite having been primary caregiver, her economic disadvantage occasioned by her providing care for *879 the children rather than pursuing a career, and the lack of protection under the divorce code because she is not entitled to alimony or equitable distribution.” Appellant’s brief at 27, fn. 8.
¶ 16 In the present case, the trial court properly determined that H.A.N. was obligated to pay child support and that the support guidelines applied.
[T]he support guidelines are the Legislature’s response to the Federal Government’s mandate that States establish mandatory guidelines for determining child support. See Introduction to the 1998 Explanatory Comment, Pa.R.C.P., Rule 1910.16-1, 42 Pa.C.S.A.; 42 U.S.C. § 667(a). This statute replaced a discretionary system and was enacted to create greater uniformity, predictability and equity in determining child support awards, while at the same time maintaining a degree of judicial discretion necessary to address unique circumstances. See Explanatory Comment-1998 to Rule 1910.16-1 (stating purpose of guidelines is to promote “(1) similar treatment of persons similarly situated, (2) a more equitable distribution of the financial responsibility for raising children, (3) settlement of support matters without court involvement, and (4) more efficient hearings where they are necessary.”)
Colonna, 788 A.2d at 442 (citing Ball v. Minnick, 538 Pa. 441, 541-452, 648 A.2d 1192, 1197 (1994)). Therefore, child support is awarded pursuant to a statewide guideline established by general rule by the Pennsylvania Supreme Court and is based upon the needs of the child and the ability of the obligor to provide support. 23 Pa.C.S.A. § 4322(a). In calculating a support award, the guidelines consider several factors including a party’s earnings and earning capacity. 42 Pa.C.S.A. § 1910.16-2. Earning capacity is the amount a party could realistically earn under the circumstances considering health, age, mental and physical condition, training and the amount of time the party has been unemployed. Malenfant v. Malenfant, 433 Pa.Super. 139, 639 A.2d 1249, 1251 (1994). Accordingly, H.A.N.’s financial condition is factored into the guidelines. Moreover, we find the other “equitable factors” she seeks the court to consider are not relevant in computing a child support award under the guidelines.
¶ 17 Order affirmed.

. The parties never entered into any parentage agreement or written contract regarding their rights or liabilities relating to the children. However, Mother alleged they orally agreed that she would retain custody of the children and H.A.N. would pay support in the event their relationship would end. H.A.N. disputes that such an oral agreement was ever made.

.We note that each party is currently married.

.On January 15, 2001, the trial court amended the December 15th Order indicating that an immediate appeal from this order may materially advance the ultimate termination of the matter. H.A.N. appealed. By Order dated June 8, 2001, this Court dismissed the appeal for failure to file a brief. L.S.K. v. H.A.N., No. 197 MDA 2001.

. Our research has revealed no other appellate cases in Pennsylvania which have specifically addressed this issue. Although other jurisdictions have addressed similar support issues, we find these cases are distinguishable from the present case. See Karin T. v. Michael T., 127 Misc.2d 14, 484 N.Y.S.2d 780 (N.Y.Fam.Ct.1985); State ex rel. D.R.M. v. Wood, 109 Wash.App. 182, 34 P.3d 887 (2001).

. We note that in In re Adoption of R.B.F. and R.C.F, 569 Pa. 269, 803 A.2d 1195 (2002), our Supreme Court recently found that the Adoption Act does not expressly preclude same sex partners from adopting. The record does not indicate whether H.A.N. intends to adopt the children.