## Valore v. Bronicki

*Christie E. Bower,* for plaintiff.
*Jeremy A. Haugh,* for defendant.

WORTHINGTON, *J.,* September 19, 2005—This matter comes before the court on Laura Bronicki's (petitioner) appeal of this court's memorandum opinion and order dated July 14, 2005. Petitioner is the biological mother of the minor child, Corey Bronicki (child), born May 5, 1998. Petitioner became pregnant with Child during a very brief relationship. The biological father has not been involved in the child's life.

Petitioner and Theresa Valore (respondent) became involved with one another when petitioner was three months pregnant. When petitioner was approximately five months pregnant, the parties moved in together and commenced an intimate relationship. After the child's birth, the parties raised the child together in the same household until the parties' relationship ended in late 2004.

On October 15, 2004, respondent filed a complaint for custody against petitioner seeking shared legal and physical custody of the child. At the Conciliation Conference held on December 17, 2004, the Custody Conciliator recommended to the court that the parties share legal and physical custody. This court adopted the agreement as a consent order on January 10, 2005.

On February 9, 2005, petitioner filed a petition to revise custody agreement and grant sole legal custody to defendant. Petitioner averred that the court should not have awarded respondent shared legal custody because she did not have standing to seek legal custody. Petitioner acknowledged that respondent had a right to visitation with the child.

In an order dated February 14, 2005, the court issued a rule upon respondent to show cause why the petition should not be granted. Respondent filed an answer to the petition to revise custody agreement on March 4, 2005. In her answer, respondent averred that she had a right to seek custody of the child because she stood in loco parentis to the child.

Petitioner filed a praecipe for argument on March 15, 2005. The court struck this matter from the argument list and a hearing was scheduled for June 24, 2005. Both

parties filed briefs in support of their respective positions. On July 14, 2005, after hearing the testimony and reviewing the briefs and arguments of counsel, we ordered the following:

(1) Respondent was granted in loco parentis standing to pursue legal and physical custody of the child.

(2) It is in the child's best interest for petitioner to be granted sole legal custody of the child. Petitioner shall communicate with respondent, if possible, prior to the making of any major decisions concerning the health, safety or welfare of the child. Additionally, petitioner shall allow respondent to have access to all records of the child.

(3) The physical custody arrangements agreed to by the parties and entered as a consent order on January 10, 2005, shall remain in full force and effect.

On August 10, 2005, petitioner appealed the July 14, 2005 memorandum opinion and order to the Superior Court of Pennsylvania. Petitioner's concise statement of matters complained of on appeal argues that it was an error of law for this court to confer in loco parentis status upon respondent to seek legal custody of the child.

It is well known that standing is a fundamental concept in our jurisprudence. A case or controversy will not be adjudicated by our courts unless it is commenced by a party who has standing. *William Penn Parking Garage Inc. v. City of Pittsburgh,* 464 Pa. 168, 191, 346 A.2d 269, 280 (1975). In order to establish standing, a proponent of an action must have a direct, substantial, and immediate interest in the matter at hand. *Franklin Township v. Commonwealth, Department of Environmental Resources,* 500 Pa. 1, 4, 452 A.2d 718, 719 (1982).

In the area of child custody, principles of standing have been applied with particular scrupulousness. *J.A.L. v. E.P.H.,* 453 Pa. Super. 78, 86, 682 A.2d 1314, 1318-19 (1996). In order to prevent intrusion into the protected domain of the family, a custody action may be brought only by a person having a "prima facie right to custody." *Id.* at 86, 682 A.2d at 1319. "Biological parents have a prima facie right to custody, but biological parenthood is not the only source of such right." *Id.* at 87, 682 A.2d at 1319. A right to seek full and partial custody may also arise by virtue of the parties' conduct. *Id.* For instance, the courts have recognized that a third party, who has stood in loco parentis to a child, has "a prima facie right sufficient to grant standing to litigate questions of custody of the child for whom he or she has cared." *Id.*

It is important to recognize that a "prima facie right to custody" only grants a party standing to seek custody. *J.A.L. v. E.P.H.,* 453 Pa. Super. 78, 87, 682 A.2d 1314, 1319 (1996). "Granting a party standing merely gives a party a personal interest in the procedure and outcome of the litigation and in no way implicates the ultimate merits of case." *Kellogg v. Kellogg,* 435 Pa. Super. 581, 588 n.5, 646 A.2d 1246, 1250 n.5 (1994). In order to be granted full or partial custody, a party must still be able to establish that granting him or her custody would be in the best interest of the child under the standards applicable to third parties. *J.A.L. v. E.P.H.,* 453 Pa. Super. 78, 87, 682 A.2d 1314, 1319 (1996). "Thus while it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided

care, nurture, and affection, assuming in the child's eye a stature like that of a parent." *Id.* at 88, 682 A.2d at 1320. When a third party has stood in loco parentis to a child, our courts recognize that it is in the child's best interest to grant such a person standing to seek custody. *Id.*

"The phrase in loco parentis refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption." *T.B. v. L.R.M.,* 567 Pa. 222, 786 A.2d 913, 916 (2001). A person stands in loco parentis to a child when they assume a parental status and discharge parental duties. *Id.* at 228-29, 786 A.2d at 916-17. The third party in this type of relationship cannot place himself in loco parentis without the consent of the biological parents. *Id.* at 229, 786 A.2d at 917, citing *B.A. and A.A. v. E.E.,* 559 Pa. 545, 550, 741 A.2d 1227, 1229 (1999).

In order to determine whether a third party stands in loco parentis to a child, the courts must examine the particular facts of the case. *J.A.L. v. E.P.H.,* 453 Pa. Super. 78, 89, 682 A.2d 1314, 1320 (1996). The fact that a third party lives with a child and the natural parent in a family setting, whether traditional or nontraditional, and develops a relationship with the child as a result of the participation and acquiescence of the natural parent is an important factor for the courts in determining whether a third party has in loco parentis standing. *Id.* at 90, 682 A.2d at 1321.

The record indicates that petitioner consented to respondent's performance of parental duties and acquiesced as respondent carried out the day-to-day care of the child. The parties bought a home together that was

titled in both of their names. They moved in together when petitioner was five months pregnant. Petitioner testified that she provided 99 percent of the child's day-to-day care while respondent provided the remainder. Petitioner took the child to the majority of his doctor's appointments while respondent attended the balance of the visits. Petitioner testified that she authorized respondent to obtain medical treatment for the child from his pediatrician. Respondent provided health care coverage for petitioner and child through her employment. Respondent picked the child up from day care once a week and the facility was authorized to release information concerning the child to respondent. The record supports the trial court's conclusion that respondent stood in loco parentis to the child and assumed a position more significant than a caretaker.

Petitioner's brief argues that respondent's inability to adopt the child or marry petitioner serves as evidence that respondent cannot stand in loco parentis to the child. Petitioner's brief at 4. First of all, it is worth noting that our Supreme Court in *In re Adoption of R.B.F.,* 569 Pa. 269, 803 A.2d 1195 (2002), held that both parties in a same-sex relationship may adopt a child. Second, the nature of the relationship between the petitioner and respondent has no legal significance to the determination of whether respondent stands in loco parentis to the child. *T.B. v. L.R.M.,* 786 A.2d 913, 918 (2001). "The ability to marry the biological parent and the ability to adopt the subject child have never been, and are not now factors, in determining whether the third party assumed parental status and discharged parental duties." *Id.* at 918-19.

The courts focus on how a third party gained authority to perform parental duties, rather than on the rela-

tionship between the third party and the biological parent. *Id.* at 919. During the parties' relationship, petitioner consented to respondent's performance of parental duties and allowed respondent to assume the status of a parent in the eyes of her child. Now that the parties have separated, petitioner cannot eradicate the relationship between respondent and the child that she voluntarily created and fostered. *J.A.L. v. E.P.H.,* 453 Pa. Super. 78, 93, 682 A.2d 1314, 1322 (1996); *Bupp v. Bupp,* 718 A.2d 1278, 1282 (Pa. Super. 1998).

Petitioner relies on *T.B. v. L.R.M.,* 786 A.2d 913 (2001), to support her argument that in loco parentis grants respondent standing to seek visitation only. Petitioner's brief at 8. In *T.B. v. L.R.M,* 786 A.2d 913, 920 (2001), our Supreme Court held that a biological mother's former lesbian partner stood in loco parentis to the child and thus had standing to seek partial custody for purposes of visitation. The court's opinion dealt solely with the third party's standing to seek custody, and did not address her chance of success on the merits. *Id.* The court's opinion did not limit what type of custody rights a third party had standing to litigate; rather it focused on whether a former lesbian partner could stand in loco parentis to a child. As addressed above, in loco parentis is a question of standing only. A court's award of standing to a third party merely gives the party a right to bring a custody action relative to the child. Such an award in no way determines the ultimate merits of the case or the best interest of the child.

Courts have granted both shared legal and physical custody to former domestic partners who were found to have in loco parentis standing. *L.S.K. v. H.A.N.,* 813 A.2d 872 (Pa. Super. 2002). In *L.S.K. v. H.A.N.,* 813 A.2d 872,

875 (Pa. Super. 2002), a woman filed a complaint for custody against her former partner, who was the children's biological mother. The trial court entered an order granting each party legal custody of the children. *Id.* The order also granted the former partner partial physical custody of the children. *Id.*

For the foregoing reasons, we maintain that the record supports respondent's in loco parentis standing to pursue legal and physical custody of the child.